**Connie ARNOLD, et al., Plaintiffs,**

v.

**UNITED ARTISTS THEATRE CIRCUIT, INC., Defendant.**

**No. C 93–0079 TEH.**

United States District Court, N.D. California.

April 26, 1994.

Memorandum Opinion and Order on Motion to Reconsider or Certify for Interlocutory Appeal Sept. 15, 1994.

Berkeley, CA, for Connie Arnold, Ann Cupolo.

Lawrence W. Paradis, Miller Starr & Regalia, Oakland, CA, Brad Seligman, Disability Rights Educ. & Defense Fund, Inc., Berkeley, CA, for Howard Ripley, Julianna Cyril, Cynde Soto, Cyrus Berlowitz.

Peter I. Ostroff, Sidley & Austin, Los Angeles, CA, Michael W. O'Neil, Orinda, CA, for United Artists Theatre Circuit, Inc.

David H. Raizman, Los Angeles, CA, for California Ass'n of Persons with Handicaps, California Foundation of Independent Living Centers, amici curiae.

Jane Curran Pandell, Randy Wright, Pandell Norvich & Borsuk, Walnut Creek, CA, for Raad/Uesugi & Associates, Stan Stanovich, Heidenfrost/Harowits & Associates.

Randy Wright, Pandell Norvich & Borsuk, Walnut Creek, CA, for Heidenfrost/Harowits & Associates.

Patrick M. Glenn, Hanson Bridgett Marcus Vlahos & Rudy, San Francisco, CA, for Irwin Seating Co.

Stephen Goldberg, Spierer Woodward Denis & Furstman, Redondo Beach, CA, Thomas J. Wolf, Myer Swanson & Adams, Denver, CO, for Proctor Co.

Timothy L. McInerney, McInerney & Dillon, P.C., Oakland, CA, for Tolladay Const. Co., Inc.

## MEMORANDUM OPINION AND ORDER

THELTON E. HENDERSON, Chief Judge.

This case is a suit by disabled persons who use wheelchairs or who walk using aids such as crutches, brought against United Artists Theatre Circuit, Inc. ("United Artists" or "UA"). Plaintiffs charge that defendant's movie theaters do not afford disabled persons full and equal access to their accommodations, in violation of California and federal law.

Plaintiffs have filed motions seeking certification of the suit as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure ("Rules") and bifurcation of the

Lawrence W. Paradis, Miller Starr & Regalia, Oakland, CA, Elaine Feingold, Disability Rights Educ. & Defense Fund, Inc.,

trial. The Court heard oral argument on this matter on March 7, 1994. After consideration of the parties' written and oral arguments, the Court, for the reasons set forth below, GRANTS plaintiffs' motion for certification of this suit as a Rule 23(b)(2) class action, and GRANTS plaintiffs' motion for bifurcation of the trial.

## I. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## A. NATURE OF THE MOTION

Plaintiffs seek certification of this lawsuit as a class action under subpart (b)(2) of Rule 23 ("(b)(2)"). Defendant opposes charging: (1) that plaintiffs' damage claims predominate over their claims for injunctive relief, thereby rendering certification under subpart (b)(2) inappropriate; (2) that plaintiffs' damage claims render the case too complicated to be certified as a class action; (3) that defendant has not "acted ... on grounds generally applicable to the class" as required for a (b)(2) class action; and (4) that various other factors militate against certifying the class under subpart (b)(2).

## B. BACKGROUND

### 1. POSTURE

This case was originally filed in state court where plaintiffs were certified as representing a class of disabled movie-goers. However, that class was defined as encompassing only disabled persons denied adequate access under California disability access law at one of defendant's theaters: the United Artists Emery Bay theater in Emeryville, California. Also, the legal standard for class certification under California law differs from the federal Rule 23 standards.

1. Plaintiffs have also sought relief under the Unruh Civil Rights Act, California Civil Code § 51 ("§ 51"), which bans various types of discrimination in public accommodations. The Unruh Act, which provides for a damage remedy, was amended in 1987 to include the disabled among the categories of persons guaranteed "full and equal accommodations ... in all business establishments" under the statute. In 1992, the statute was again amended so that, effective January 1993, violations of the ADA now generally also constitute violations of § 51.

■ Plaintiffs style their motion as one for "enlargement" of the existing class certification. However, in view of the differences between the state court's class certification and the certification sought on this motion, and in light of the fact that a federal court has the discretion to revisit at any time all or any part of a class certification order in an action pending before it, *Harriss v. Pan American World Airways, Inc.*, 74 F.R.D. 24, 36 (N.D.Cal.1977), the Court shall treat this motion as if it were an initial motion for class certification.

### 2. CAUSES OF ACTION

■ Plaintiffs' suit challenges the adequacy of the accommodations provided for disabled persons who use wheelchairs for mobility and for semi-ambulatory persons who walk using crutches, braces, or walkers at more than seventy of defendant's theaters located in California. The chief causes of action under which plaintiffs challenge these accommodations are the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the California Disabled Persons Act, California Civil Code § 54.1 ("§ 54.1").[1]

#### a. THE AMERICANS WITH DISABILITIES ACT

The ADA guarantees persons with disabilities a right to "the full and equal enjoyment of the ... accommodations of any place of public accommodation." 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(a). With respect to facilities constructed or last remodeled *before* January 26, 1993—the effective date of the ADA's requirements regarding new construction—the ADA requires owners

This Court ruled in an order in this case dated August 11, 1993 that, in amending the Unruh Act, the California Assembly expressly declined to adopt and incorporate any ADA standards requiring the physical modification of existing facilities. Thus, it is the law of the case that no damages or injunctive relief are available under § 51 for disability access claims based on theaters' failure to modify their structures so as to accommodate persons with disabilities, except insofar as such claims involve facilities built or remodeled after the January 1993 effective date of the 1992 amendments.

to remove architectural barriers that are structural in nature, in existing facilities, ... where such removal is readily achievable,

and where the barriers interfere with disabled persons' "full and equal enjoyment" of the facilities. 42 U.S.C. § 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304(a). In particular, with respect to seating for the disabled in such existing auditoriums, the ADA regulations provide:

*Seating in Assembly Areas*

(a)*Existing Facilities.* (1) *To the extent that it is readily achievable,* a public accommodation in assembly areas shall—

(i) Provide a reasonable number of wheelchair seating spaces and seats with removable aisle side arm rests; and

(ii) Locate the wheelchair seating spaces so that they—

(A) Are dispersed throughout the seating area;

\* \* \* \* \* \*

(D) Permit individuals who use wheelchairs to sit with family members or other companions.

28 C.F.R. § 36.308(a) (emphasis added). The ADA authorizes only injunctive relief in enforcement actions brought by private parties challenging conditions at existing facilities that have not been remodeled since January 26, 1993. 42 U.S.C. § 12188(a)(2).

Plaintiffs charge that in *all* of the UA theaters in California that were built and last remodeled before January 26, 1993, defendant has violated the ADA by not making "readily achievable" changes in order better to afford disabled movie-goers "full and equal enjoyment" of the facilities. *See* Second Amended Complaint, Exhibs. A & B (listing 73 of defendant's theaters). In particular, plaintiffs allege that the following changes are readily achievable, yet have not been implemented, in many of defendant's theaters in California:

(i) modifications to create an adequate number of wheelchair seating spaces which are sufficiently integrated [with seating for the non-disabled] and, in auditoriums with over 300 seats, dispersed [in two or more locations that are different distances from the screen];

(ii) removal of barriers to accessible paths of travel; and

(iii) modifications to restroom facilities where necessary for access.

Second Amended Complaint ¶ 13.

With respect to covered facilities constructed or altered *after* January 26, 1993, the ADA *requires* that they comply with certain disability access standards known as the ADA Access Guidelines ("ADAAG"). 28 C.F.R. § 36.406. *See* ADAAG, codified as Appendix A to 28 C.F.R. Part 36. Those guidelines specify the minimum number of wheelchair locations required in auditoriums of different sizes, ADAAG § 4.1.3(19)(a), and mandate the following regarding such locations:

*Placement of Wheelchair Locations.*

Wheelchair areas shall be an integral part of any fixed seating plan and shall be provided so as to provide people with physical disabilities a choice of admission prices and lines of sight comparable to those for members of the general public. They shall adjoin an accessible route that also serves as a means of egress in case of emergency. At least one companion fixed seat shall be provided next to each wheelchair seating areas. When the seating capacity exceeds 300, wheelchair spaces shall be provided in more than one location. Readily removable seats may be installed in wheelchair spaces when the spaces are not required to accommodate wheelchair users.

ADAAG § 4.33.3.

Plaintiffs allege that in the UA theaters that have been built or renovated since the date that the ADA's new construction requirements took effect, defendant has been engaging in a policy and practice of failing to include wheelchair seating that complies with the ADAAG requirements. Second Amended Complaint ¶ 14. In particular, plaintiffs charge that in such theaters, all wheelchair spaces have been located in the back row. Plaintiffs assert that, where an auditorium has over 300 seats, such placements violate the ADAAG which they maintain require that, in auditoriums of that size, wheelchair

spaces be provided in more than one location which are at different distances from the screen. Decl. of Peter Margen (Revised) ¶ 23.

### b. CALIFORNIA CIVIL CODE § 54.1

California Civil Code § 54.1 confers on disabled persons a right of full and equal access to places of public accommodation. Cal.Civ. Code § 54.1(a). The degree of "full and equal access" to places of public accommodation guaranteed to disabled persons under § 54.1(a) is defined by building code standards that are imposed under California Government Code § 4450. *Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168, 182 266 Cal. Rptr. 804, 812–13 (1st Dist.1990). Government Code § 4450, which previously had mandated disability access standards only for publicly owned buildings and buildings constructed with public funds, was amended in 1979 so as to authorize the imposition of disability access requirements for all buildings. The particular standards required for different types of buildings were to be established under administrative regulations promulgated by the Office of the State Architect. The first edition of these regulations was promulgated in 1981, and took effect in 1982. *People ex rel. Deukmejian v. CHE, Inc.,* 150 Cal.App.3d 123, 133–34, 197 Cal. Rptr. 484, 491 (4th Dist.1983). *See* Calif.Bldg.Code, Cal.Code Regs. tit. 24, Part 2 ("Title 24 regulations").

The regulations promulgated in 1981 specified that they "appl[ied] to the construction, alteration, moving, demolition, repair, and use of any building or structure within the authority of any State agency." Cal.Code Regs. tit. 24, § 2–103(a). The regulations applied to all theaters built or remodeled after the date the regulations took effect in 1982, since the jurisdictional authority of at least one state agency, the Office of Access Compliance of the Office of the State Architect, extends to all places of public accommodation, including theaters. *Id.* § 2–110(b)(11)(B)(1)(c).[2]

The regulations require that certain types of places of public accommodation provide seating for the disabled and spaces for disabled persons who use wheelchairs. Section 2–611 of those regulations provides, in pertinent part:

*Special Standards of Accessibility*

*Sec. 2–611*

(a) *General.* The provisions of this section apply to the specified types of facilities and identify specific requirements of accessibility and usability which shall be provided for each of the listed occupancy uses.

(b) *Auditorium, Assembly Halls, Theaters and Related Facilities.*

1. *Seating.* Seating for the handicapped shall be accessible from the main lobby or from a primary entrance, together with related toilet facilities.

A. In all assembly places where seating is provided there shall be spaces for the handicapped using wheelchairs. The number of such spaces is shown in Table 2–6B.

\* \* \* \* \* \*

(2) Wheelchair spaces shall be level, and when the seating capacity exceeds 300, shall be in more than one location. Each such space shall be a minimum of 60 inches in length and 30 inches in width.

(3) Readily removable seats may be installed in these wheelchair spaces when such spaces are not required to accommodate wheelchair users.

Cal.Code Regs. tit. 24, § 2–611. In its December 7, 1993 order, the Court ruled that § 2–611(b)(1)(A)'s reference to "assembly places" means that wheelchair seating must be situated together with seating for nondisabled persons in the assembly area of a place of public accommodation and cannot be located in a separate section outside of the assembly area. The Court also ruled that, in addition to the specific requirements of accessibility and usability enumerated in § 2–611, accommodations for persons with dis-

---

2. Effective with the 1991 edition, the regulations "apply to the construction, alteration, moving, demolition, repair, and use *of any building or* *structure within [California],"* subject to certain exceptions not implicated in this case. Cal.Code Regs. tit. 24, § 2–103 (1991) (emphasis added).

abilities must also satisfy a general requirement of accessibility and usability that is evidenced in the language of both § 2–611(a) and § 2–102.1(b). The Court ruled that in order to be "usable" under the general usability requirement, wheelchair spaces must be integrated in with non-wheelchair seating so as to permit persons in wheelchairs to sit together with non-disabled friends or family members when they attend films. In construing the Title 24 regulations in this way, the Court relied in part on an administrative interpretation of the regulations rendered by the Office of the State Architect. *See State Architect's Interpretive Manual* at § 2–611(b)1.A (2d ed. 1986 & 3d ed. 1989). Both injunctive relief and damages are available under § 54.1 to disabled persons aggrieved by violations of the Title 24 disability access standards. Cal.Civ.Code § 54.3; *id.* § 55.

Plaintiffs charge that at least seventeen of defendant's theaters have been built or remodeled since the 1982 effective date of the Title 24 regulations and that many of these incorporate design features that fall below the disability access standards that the regulations impose for such facilities. These features include: (1) placement of designated wheelchair areas behind low walls at the back of theaters in violation of the § 2–611(b)(1)(A) "assembly area" requirement; (2) a lack of fixed companion seats alongside wheelchair spaces, rendering the spaces unusable in violation of the usability requirement of § 2–611(a) and § 2–102.1(b); (3) in theaters with seating capacity exceeding 300, a lack of wheelchair seating located in different locations that are different distances from the screen, as allegedly required by § 2–611(b)(1)(A)(ii); (4) placement of semi-ambulatory spaces, mandated under § 2–611(b)1.B, only in the front rows of the theater, rendering them unusable in violation of § 2–611(a) and § 2–102.1(b); and (4) failure to provide paths of travel into and inside of the theaters that are accessible to disabled persons, in violation of § 2–110(b)(11)(A)(5). Plaintiffs' Class Cert. Memo at 10–16.

## 3. PROPOSED CLASS CERTIFICATION

Plaintiffs move that they be certified as representing a class composed of:

A. All persons who are currently being denied full and equal access, under Title III of the Americans with Disabilities Act of 1990 (Pub.Law No. 101–336; 42 U.S.C. § 12101 *et seq.*), and Regulations promulgated thereunder at 28 C.F.R. part 36, to one or more of defendant's theatres in California because they are persons with disabilities who use wheelchairs for mobility or are semi-ambulatory and are aggrieved by one or more of the following access barriers at any such theatre:

1. Lack of wheelchair and/or semi-ambulatory seating that meets access requirements;

2. Path of travel barriers to and/or within these facilities;

3. Lack of required access to and/or within restrooms at these facilities.

B. All persons who have been denied full and equal access to one or more of defendant's movie theatre facilities in California which have been constructed, renovated, and/or remodeled since July 1982, during the period of time from three years prior to the date of filing of the initial complaint in this action to the conclusion of this action, because they:

1. (a) Were persons with a disability who use a wheelchair for mobility and/or are semiambulatory; *or*

(b) Were attendants, family members or friends who were paid or regularly did accompany such a disabled person out of the home;

*and either:*

2. (a) Entered and utilized one or more of these theatre complexes facilities; *or*

(b) Knew that one or more of these theatre facilities did not have lawful wheelchair seating, or legally required path of travel access, and were thereby deterred from entering one or more such complexes.

## C. DISCUSSION

■ In order for a federal lawsuit to be certified as a class action, the party moving for certification must show that all of the conditions specified in subpart (a) of Rule 23

are satisfied. In addition, the movant must also show that the requirements for at least one of the three types of class actions provided for under subpart (b) of Rule 23 are met. Plaintiffs here seek certification of a class under subpart (b)(2). District court rulings on class certification are reviewed for abuse of discretion by the court of appeals. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir.1977).

### 1. RULE 23(a) REQUIREMENTS

■ Subpart (a) of Rule 23 permits class certification only where:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defense of the representative parties are typical of the claims or defense of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). The party moving for class certification bears the burden of showing that the subpart (a) requirements are satisfied. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982). To satisfy these requirements, plaintiffs must provide facts; "mere repetition of the language of the Rule is inadequate." *Doninger*, 564 F.2d at 1309 (quoting *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir.1969)). It appears quite clear that plaintiffs have carried their burden of proving the numerosity, commonality, typicality, and adequacy of representation requirements of subpart (a). Indeed, defendant does not take issue with these contentions.

#### a. Numerosity

■ Subpart (a)(1)'s numerosity requirement does not mean that the class must be so numerous that joinder is impossible but rather simply that joinder of the class is impracticable. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.1964). Whether joinder would be impracticable depends on the facts and circumstances of each case and does not, as a matter of law, require the existence of any specific minimum number of class members.

*Kraszewski v. State Farm Ins. Co.*, 27 Fair Empl.Prac.Cas. (BNA) 27, 29, 1981 WL 26982 (N.D.Cal.1981). Plaintiffs "need not state the exact number of potential members nor identify all the members of the class so long as the putative class is not amorphous." *Martinez v. Bechtel Corp.*, 10 Empl.Prac.Dec. (CCH) 6351, 6353, 1975 WL 274 (N.D.Cal. 1975).

■ Plaintiffs have submitted evidence indicating that there are over 175,000 wheelchair users and over 700,000 semi-ambulatory persons in California. *See* Decl. of Edward Roberts, Exhib. 2 to Pl. Appendix A, ¶¶ 12, 14. This evidence indicates that, particularly for disabled persons who live independently (i.e.—not in an institutional setting or group home), movies are an important form of recreation. Alameda County in particular has a proportionally greater wheelchair-using population than do other regions of the United States and a greater portion of disabled persons in that region live independently than elsewhere. *Id.* ¶ 9. In light of the foregoing, it appears that the number of disabled persons affected by the alleged access violations at the more than 70 theaters operated by defendant in California is in the thousands. *Id.* ¶¶ 8–15. By the very nature of this class, its members are unknown and cannot be readily identified. For these reasons, the Court concludes that joinder of the class members would be impracticable—indeed, impossible. *Phillips v. Joint Legislative Committee on Performance and Expenditure Review*, 637 F.2d 1014, 1022 (5th Cir. 1981), *cert. denied, sub. nom. Mississippi v. Phillips*, 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982).

#### b. Common Questions of Law or Fact

■ Subpart (a)(2)'s requirement that there be questions of law or fact common to the class is "met by the alleged existence of common discriminatory practices. The actions of the defendant need not affect each member of the class in the same manner." *Walthall v. Blue Shield of Calif.*, 16 Fair Empl.Prac.Cas. (BNA) 626, 628, 1977 WL 34 (N.D.Cal.1977). Nor must "all questions of law and fact involved in the dispute be com-

mon to all members of the class." *Kraszewski,* 27 Fair Empl.Prac.Cas. (BNA) at 29.

Inadequate wheelchair accommodations at particular theaters are very likely to affect all wheelchair-users in the same way. The same is true with respect to the affect of accommodations for the semi-ambulatory on semi-ambulatory movie-goers. Thus the state of such accommodations at defendant's various theaters, and the legal adequacy of those accommodations, are issues of fact and law common to all of those disabled persons affected by them.

It is true that members of the class will each likely have attended only certain of defendant's theaters. This means that, in a sense, the proposed class is divided into more than seventy subclasses composed of disabled persons challenging the adequacy of the accommodations at each of defendant's theaters in California.

Addressing, for the time being, only the subclasses, it is quite clear that the commonality requirement is satisfied *within* each subclass. Within each subclass *all* of the issues presented are common ones, at least insofar as plaintiffs assert claims for injunctive relief. Even with respect to damage claims, the most important issues—the state of accommodations at defendant's various theaters during the three year statute of limitations period prior to the filing of this suit, and the legal sufficiency thereof—are common to the subclass. The only damages issue not common to the subclass is the simple question of the number of instances that individual class members were aggrieved by inadequate accommodations at defendant's theaters during the period covered by the lawsuit. (No individual quantum of damages issues will be presented, for plaintiffs have stated that they will seek no more than the statutory minimum of $250 damages for violations of California Civil Code § 54.1 and § 51, their only causes of action that carry damage remedies.)

In light of the above, it is clear that, at the very least, the commonality requirement would be satisfied for certification of a class comprised of the seventy-odd subclasses. However, such is not necessary since, even *among* the subclasses, there exist sufficient common issues to meet the subpart (a)(2) condition. As discussed above, the specific theater design features challenged by plaintiffs are ones, some or all of which, they allege exist or have existed in many if not all of defendant's theaters during the relevant period. From the fact that the same categories of design features are being challenged in each theater, it follows that the legality of those features are legal issues common to the claims of the members of all of the subclasses. In addition, where, as here, plaintiffs challenge conditions at several sites, all owned by a single corporate defendant, the legal standard applied under the ADA to evaluate the adequacy of the accommodations at each of the respective theaters is one that hinges, in part, on various corporation-wide factors such as the availability of resources. *See* 42 U.S.C. § 12181(9)(c); 28 C.F.R. § 36.104 (readily achievable standard, as applied to any particular site, requires consideration of the overall financial resources of the entire company and the relationship, fiscal and otherwise, of that site to the overall corporate operation). These are additional issues of fact and law common among the subclasses. In light of the foregoing, the Court concludes that the issues common to all of the members of the single proposed class are sufficient to satisfy subpart (a)(2).

#### c. Typicality of Claims

Subpart (a)(3) requires that the claims or defenses of the proposed class representatives be ones that are typical of the claims or defenses of the class they seek to represent. Typicality has been interpreted to mean that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon,* 457 U.S. at 156, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight Systems, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977)). The claims of the named plaintiffs need not be identical to the claims of the class; they need only arise from the same remedial and legal theories. *Kraszewski,* 27 Fair Empl.Prac.Cas. at 31 (citing *Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460 (N.D.Cal. 1978)).

Of the named plaintiffs seeking to serve as class representatives in this suit, Connie Arnold, Ann Cupulo, Howard Ripley, and Cynde Soto are disabled persons who use wheelchairs for mobility. Julianna Cyril is a disabled person who is semi-ambulatory.[3] All allege that they have attended movies at various UA theaters where they were subjected to what they allege were legally inadequate accommodations. All further allege that, as a consequence of such experiences, on various subsequent occasions they were deterred from attending various of defendant's theaters. *See* Pl. Appendix B. In light of these alleged facts, there can be no question that these named plaintiffs possess the same interests, have suffered the same alleged injuries, and rely on the same legal theories as the other members of the proposed class. Indeed, in a public accommodations suit such as this one where disabled persons challenge the legal permissibility of architectural design features, the interests, injuries, and claims of the class members are, in truth, identical such that *any* class member could satisfy the typicality requirement for class representation.

### d. Adequacy of Representation

In considering whether the representative plaintiffs will fairly and adequately protect the interests of the class, courts have looked to whether the named plaintiffs' interests are in conflict with or antagonistic to those of the class. *Social Services Union, Local 535 v. County of Santa Clara,* 609 F.2d 944, 947 (9th Cir.1979). Here, named plaintiffs Connie Arnold, Ann Cupulo, Howard Ripley, Cynde Soto, and Julianna Cyril are all members of the class they seek to represent. Their interests are not in conflict with those of the class and, in fact, they have no individual claims different from those of the other class members. In addition, plaintiffs' attorneys are well qualified to serve as class counsel, having substantial experience litigating both class-action cases and disability ac-

cess suits. In light of the foregoing, the Court concludes that the named plaintiffs can fairly and adequately protect the interests of the absent class members.

### 2. RULE 23(b) REQUIREMENTS

In order for a suit to be eligible for certification as a class action under subpart (b)(2) of Rule 23,

> the party opposing the class [must] ha[ve] acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Fed.R.Civ.P. 23(b)(2). As explained below, the Court concludes that this requirement is satisfied in this case.

### a. WHETHER PLAINTIFFS' DAMAGE CLAIMS PRECLUDE CLASS CERTIFICATION UNDER SUBPART (b)(2)

As recounted above, plaintiffs' chief causes of action are claims for injunctive relief under the ADA, and claims for injunctive relief and money damages under California Civil Code § 54.1. Defendant argues that the presence of claims for money damages among plaintiffs' causes of action renders this suit, or at least plaintiffs' damage claims, ineligible for class certification under subpart (b)(2).

"Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages." *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.) (citing *EEOC v. General Telephone Co.,* 599 F.2d 322, 334 (9th Cir.1979)), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986). However, a class may not be maintained under subpart (b)(2) where "the appropriate final relief relates exclusively or predominantly to money damages." *Rules Advisory Committee Notes to 1966 Amendments to*

---

**3.** Plaintiff Cyrus Berlowitz is the father of Ana Berlowitz, a disabled minor who uses a wheelchair for mobility. Plaintiff Berlowitz seeks to represent a class composed of persons who have been hindered in their ability to attend films with disabled companions by legally inadequate ac-

commodations at defendant's theaters. However, the Court rules below that such companions cannot sue for damages under § 54.1. As explained below, this ruling renders irrelevant plaintiffs' attempt to sue on behalf of such companions.

*Rule 23, reprinted at* 39 F.R.D. 69, 102 (1966).

■ Defendant contended at oral argument that claims for monetary relief may be included as part of subpart (b)(2) class actions only where such claims are classified as equitable relief, as in claims for back pay in employment discrimination actions under Title VII of the 1964 Civil Rights Act.[4] This contention is, however, false, as demonstrated by the numerous cases in which claims seeking the legal—as opposed to equitable—remedy of money damages have been approved for certification as part of (b)(2) class actions. *See, e.g., Parker v. Local Union No. 1466,* 642 F.2d 104, 107 (5th Cir.1981) (per curiam) (punitive damages under the Labor–Management Reporting and Disclosure Act); *Jones v. Diamond,* 519 F.2d 1090, 1100 n. 17 (5th Cir.1975) (damages under § 1983); *Lloyd v. City of Philadelphia,* 121 F.R.D. 246, 251 (E.D.Pa.1988) (same).

■ Rather, whether plaintiffs' damage claims may be certified as part of a (b)(2) class action depends on whether inclusion of those claims with plaintiffs' claims for injunctive relief would render the suit one "relat[ing] ... *predominantly* to money damages" (emphasis added). Most of the reported cases applying this "predominance" standard are rather conclusory and do not enunciate clear rules for applying the test. *See* 1 H. Newberg, *Class Actions* § 4.14, at 4–49 (3d ed. 1992) (characterizing the reported cases as such). Addressing this issue, this Court has written:

> In making the discretionary determination whether this "predominance" standard is satisfied in any given case, it is not particularly helpful to position the injunctive relief sought on one scale, the monetary relief on another, and then somehow attempt to ascertain which is the heavier scale. Indeed, this is an almost impossible exercise as the importance of eradicating discriminatory practices (and possibly initiating affirmative remedies) through injunctive relief is virtually immeasurable. Rather, it is more helpful to return to the

principles underlying the creation of the (b)(2) category.

The hallmark of the (b)(2) action is homogeneity. It is this characteristic that allows the court to dispense with notice to the class and bind all members to any judgment on the merits without an opportunity to opt out. In class actions alleging employment discrimination, homogeneity is usually ensured because, the class "by sharing a common characteristic subjected to discrimination becomes cohesive." In short, the defendant's allegedly discriminatory conduct affects the class as a whole, and makes final injunctive relief appropriate. *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 250, 253 (3d Cir.), *cert. denied,* 421 U.S. 1011 [95 S.Ct. 2415, 44 L.Ed.2d 679] (1975); *Avagliano v. Sumitomo Shoji America, Inc.,* 614 F.Supp. 1397, 1400 (S.D.N.Y.1985); *Connor v. Highway Truck Drivers & Helpers,* 68 F.R.D. 370, 374 (E.D.Pa.1975).[8]

Where an action would qualify under either (b)(2) or (b)(3), the courts favor certification under the former section because, by compelling inclusion, such actions promote "judicial economy, consistency of result, and binding adjudication more effectively than 23(b)(3)." *Robinson v. Union Carbide Corp.,* 544 F.2d 1258, 1260 (5th Cir.), *cert. denied,* 434 U.S. 822 [98 S.Ct. 65, 54 L.Ed.2d 78] (1977); *Wetzel,* 508 F.2d at 253; 1 H. Newberg, *Class Actions* § 4.20 (1985).

---

[8] In contrast, section (b)(3) applies to actions that are not as cohesive in nature, but the questions of law or fact common to the class predominate and the court finds that a class action is the superior method of adjudicating the controversy. Class members are entitled to notice and an opportunity to opt out prior to judgment on the merits. Fed.R.Civ.P. 23.

*Barefield v. Chevron,* 1988 WL 188433, at *3–*4, 1988 U.S.Dist. LEXIS 15816, at *9–*10, 48 Fair Empl.Cas. (BNA) 907 (N.D.Cal.1988) (Henderson, J.). Other courts have concurred in this analysis, identifying the cohesiveness of the class and the homogeneity of

---

**4.** Until it was amended as part of the Civil Rights Act of 1991 to provide for a damage remedy, Title VII authorized only equitable relief.

the members' interests as the salient factors on which the availability of the (b)(2) class action form hinges:

> At base, the (b)(2) class is distinguished from the (b)(3) class by class cohesiveness.... Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through "preexisting or continuing legal relationships" or by some significant common trait such as race or gender. Although the interests of the different members of a (b)(2) class are by no means identical the substantial cohesion of those interests makes it likely that representative members can adequately represent the interests of absent members and that the need for and interest in individual representatives will be minimal. Under such circumstances, the contribution that individual notice [—of the sort required for a (b)(3) class action—] can make to buttressing adequate representation is not great enough to warrant a mandatory procedural or constitutional requirement.

*Holmes v. Continental Can Co.,* 706 F.2d 1144, 1155 n. 8 (11th Cir.1983), *quoting* Note, "Notice in Rule 23(b)(2) Class Actions for Monetary Relief: *Johnson v. General Motors Corp.,*" 128 U.Pa.L.Rev. 1236, 1252–53 (1980) (footnotes omitted). *See generally Holmes,* 706 F.2d at 1152–60; *see also Williams v. Lane,* 129 F.R.D. 636, 640–42 (N.D.Ill.1990). This interpretation of the policy concerns underlying the restrictions on the sorts of suits that may be certified as (b)(2) class actions is supported by the fact that civil rights class actions are generally certified under subpart (b)(2). *See Holmes,* 706 F.2d at 1152 (gathering authorities). Indeed, the Federal Rules Advisory Committee that drafted the amendments that added subpart (b)(2) to Rule 23 cited civil rights cases as the chief category of action for which the (b)(2) category was created. *See Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted at* 39 F.R.D. 69, 102 (1966).

Analyzing the proposed class in terms of this criterion, it is clear that the claims of the class members are remarkably homogenous. As noted above in discussing the subpart (a)(2) common law and fact requirement, in this case the class members, rather than challenging individual actions taken by the defendant against each of them separately, all challenge the same actions: defendant's failure to change certain architectural features found at its various theaters. The challenged design features affect all class members in almost precisely the same way because of common distinguishing characteristics shared by all the class members: their status as wheelchair-using or semi-ambulatory disabled persons. This fact lends the proposed class an extraordinary degree of homogeneity, far greater than that of even the average Title VII disparate treatment suit in which plaintiffs allege that many separate actions against individuals manifest a common pattern and practice of discrimination. In view of this high degree of homogeneity, it is clear that this suit is a paradigm of the type of action for which the (b)(2) form was created.

Defendant cites a variety of cases for the proposition that where large amounts of damages or statutory penalties are sought, an action may not be certified as a (b)(2) class action, *see Robertson v. National Basketball Ass'n,* 389 F.Supp. 867, 900 (S.D.N.Y. 1975), or, indeed, as a class action at all. *See, e.g., Kline v. Coldwell, Banker & Co.,* 508 F.2d 226, 234–35 (9th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975); *Marks v. San Francisco Real Estate Board,* 69 F.R.D. 353, 355–56 (N.D.Cal.1975). However, nearly all such cases cited by defendant involve claims under the federal antitrust laws or other business regulatory statutes. Those cases are distinguishable on the grounds that, first, they were not civil rights suits—the type of action for which the (b)(2) form was specifically designed—and, second, they all included damage claims in which the quantum of damages suffered involved a complicated, individual-specific calculus. While the presence of damage claims of that sort undermines class homogeneity, sometimes to the point of precluding (b)(2) certification, as discussed below, this case is not complicated in that way by the presence of such claims.

## b. WHETHER PLAINTIFFS' DAMAGE CLAIMS RENDER THE CASE TOO COMPLICATED TO BE CERTIFIED AS A CLASS ACTION

■ Defendant argues that plaintiffs' damage claims so complicate the suit as to render the case—or at least the damage claims—inappropriate for certification as a class action. Under California Civil Code § 54.1, plaintiffs seek damages for each instance in which a disabled class member visited a UA theater and was subjected to legally inadequate accommodations there, or was deterred from visiting a UA theater by her knowledge of inadequate accommodations at the facility.[5] For each such violation, plaintiffs seek the $250 statutory minimum damage award provided for under § 54.1.[6]

Putting plaintiffs' "deterrence" claims to one side for the moment, since plaintiffs seek only statutory minimum damages for each violation, adjudication of the damage claims requires only (1) proof of the access situation at each theater over the course of the period at issue—from three years prior to the filing of this suit until the present; (2) determination of the legal sufficiency under § 54.1 of the accommodations at each theater during that period; and (3) proof of the number of occasions that each plaintiff visited and was subjected to inadequate accommodations at a UA theater during the relevant period. It is clear that plaintiffs' damage claims based on actual visits to UA theaters are far less complicated than the average Title VII suit where back pay relief is sought. In such Title VII cases, in addition to proving illegal discrimination, claimants must both establish that they individually suffered damages and prove the extent of those damages. Moreover, defenses reducing the damage award by the amount of any interim earnings, or for failure to mitigate the injury, are available to defendants, as well as the defense that there was no but-for causation because, even absent discrimination, the same employment action would have been taken for different, legitimate reasons. *See, e.g., Teamsters v. United States,* 431 U.S. 324, 367–68, 97 S.Ct. 1843, 1870–71, 52 L.Ed.2d 396 (1977); *Nanty v. Barrows Co.,* 660 F.2d 1327, 1332 (9th Cir.1981). In view of how well established it is that employment discrimination suits involving such individual-specific awards of lost back pay may be maintained as (b)(2) class actions, *see, e.g., Probe,* 780 F.2d at 780, there can be no doubt that the instant damage claims are not too complex for (b)(2) certification.

■ As for plaintiffs' "deterrence" claims, the Court recently ruled in its April 15, 1994 order that claims arising from such incidents can state a claim for damages under § 54.1. However, the fact that such claims are actionable is not dispositive of the question of whether they ought properly to be certified as part of a class action. Unlike claims based on actual theater visits, claims alleging incidents of deterrence are not susceptible to clear, direct proof. As a consequence, "deterrence" claims raise individual-specific issues that would substantially increase the complexity of the case, were they certified as part of this class action.

"[I]t is within the discretion of the trial judge, under Rule 23(c)(4), to limit the issues in a class action to those parts of a lawsuit which lend themselves to convenient use of the class action motif." *Williams v. Owens-Illinois, Inc.,* 665 F.2d 918, 929 (9th Cir.1982) (quoting *Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905, 906 (9th Cir.1975)) (internal quotation marks omitted). Exercising this discretion, the Court rules that plaintiffs' deterrence claims are inappropriate for class certification. Of course, this ruling does not in any way affect the named plaintiffs' right to litigate their own deterrence claims in this case.

---

**5.** Plaintiffs also seek damages under § 54.1 on behalf of companions of disabled persons who have also been aggrieved by such violations. However, as noted earlier, the Court concludes below that companions of disabled persons are not afforded a cause of action for damages under § 54.1.

**6.** Plaintiffs also seek general, unlimited punitive damages, but this Court recently ruled in its order of April 13, 1994 that such damages are not available under § 54.1 or under plaintiffs' other California law causes of action.

### c. WHETHER DEFENDANT HAS "ACTED ... ON GROUNDS GENERALLY APPLICABLE TO THE CLASS" AS REQUIRED FOR A (b)(2) CLASS ACTION

As noted above, it is a prerequisite for certification under subpart (b)(2) that

> the party opposing the class ha[ve] *acted or refused to act on grounds generally applicable to the class,* thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . .

Fed.R.Civ.P. 23(b)(2) (emphasis added). Defendant argues that it has not acted "on grounds generally applicable" to the members of the putative class and that, consequently, this prerequisite for (b)(2) certification is not satisfied.

### (1) ARGUMENT THAT DIFFERENCES AMONG ALLEGED ACCESS VIOLATIONS AT DIFFERENT THEATERS PRECLUDE (b)(2) CERTIFICATION

Defendant asserts that, generally, conditions vary from theater to theater. Because the various class members reside near and attend different UA theaters, defendant charges that, by virtue of the differing conditions, defendant has not "acted ... [toward them] on grounds generally applicable to the class." For the reasons set forth below, the Court rejects this contention. The Court concludes that any such differences are not relevant to whether (b)(2) certification is appropriate. Alternatively, the Court rules that, in any event, there exist important commonalities among the disability access standard violations alleged at the various theaters.

### (a) DIFFERENCES IN VIOLATIONS AT DIFFERENT THEATERS ARE NOT RELEVANT

Clarification of the meaning of the subpart (b)(2) "act[ion ... on grounds generally applicable to the class" requirement is provided by the Federal Rules Advisory Committee's Notes to the 1966 Amendments to Rule 23 under which subpart (b)(2) was created. The applicable note states that

> Action or inaction is directed to a class within the meaning of [subpart (b)(2)] even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class.

*Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted at* 39 F.R.D. 69, 102 (1966). This appears to be precisely the circumstance presented in this case. The proposed certification is for a *plaintiff* class, not a *defendant* class. (Although the suit concerns many theaters, they are all owned by and branches of a single corporate defendant and so there is no issue of certifying a defendant class.) If any wheelchair-using or semi-ambulatory member of the plaintiff class visited any given one of defendant's theaters, he or she would presumably encounter the same obstacles there that any other wheelchair-using or semi-ambulatory class member would. Thus, different plaintiff class members are subject to differing access situations at defendant's theaters only insofar as the individual moviegoers choose to attend different theaters. However, the above-quoted Advisory Committee Note expressly provides that where action would generally affect members of the class in the same way, but has only actually affected a subset of the class, (b)(2) certification is still appropriate. Thus, any differences among defendant's various theaters is irrelevant for purposes of (b)(2) certification. Although this conclusion may appear anomalous, it follows from the fact (1) that architectural barriers affect all wheelchair-using or semi-ambulatory disabled persons in essentially the same way, and (2) that the disability access laws vest all disabled persons with a right to certain standards of accessibility at all covered facilities.

### (b) IN ANY EVENT, THERE ARE IMPORTANT COMMONALITIES AMONG THE DISABILITY ACCESS STANDARDS VIOLATIONS ALLEGED AT THE DIFFERENT THEATERS

Moreover, even if it were the case that it was necessary to demonstrate the existence of a commonality among the disability access violations alleged at the different theaters

before a (b)(2) class could be certified, plaintiffs have succeeded in doing so. As regards their claims under California Civil Code § 54.1, plaintiffs have alleged that the UA theaters in California that have been built or remodeled since 1982 when the California Title 24 disability access standard regulations took effect, have shared during the period covered by this lawsuit—from three years before the filing of the suit until the present—many if not all of the following allegedly illegal design features: (1) placement of designated wheelchair areas behind low walls at the back of theaters; (2) a lack of fixed companion seats alongside wheelchair spaces; (3) in theaters with seating capacity exceeding 300, a lack of wheelchair seating located in different locations that are different distances from the screen (so-called "dispersed" wheelchair seating); (4) placement of semi-ambulatory seating only in the front rows; and (5) failure to provide paths of travel into and inside of the theaters that are accessible to disabled persons.

As regards plaintiffs' claims that all of defendant's California theaters—including those built and last remodeled before 1982—are in violation of ADA standards, plaintiffs have similarly alleged commonalities among the violations at the different theaters. First, defendant's access policies and practices have been centrally determined with design, customer service, budgetary authority, and ADA implementation policies dictated and supervised by its main office. *See* Defendant's Opposition Memo at 11–12; Decl. of UATC President Peter C. Warzel ¶¶ 7–9; Exhib. A. to Reply Decl. of Melissa Bauman Ward at 75:16–76:11. Second, as noted above, whether a proposed change is deemed "readily achievable" under the ADA depends on the defendant firm's "overall financial resources." 42 U.S.C. § 12181(9)(b); 28 C.F.R. § 36.104. For multi-site companies such as UA, the ADA expressly requires that defendant assess the financial condition, not just of the sites involved, but of the entire corporation. 42 U.S.C. § 12181(9)(c); 28 C.F.R. § 36.104. Thus, in order to evaluate plaintiffs' ADA claims, it is necessary to examine defendant's theater operations as a whole. Third, plaintiffs' ADA claims challenge the same specific design features at

defendant's various theaters, alleging that they are barriers to the disabled the removal of which is "readily achievable." The foregoing elements are common to the ADA claims of all of the class members.

**(2) ARGUMENT THAT PLAINTIFFS' CLAIMS UNDER CALIFORNIA CIVIL CODE § 54.1 FOR INJUNCTIVE RELIEF ARE MOOT, PRECLUDING (b)(2) CERTIFICATION OF THE § 54.1 DAMAGE CLAIMS**

■ In its opposition memo, defendant contends that several of the design features challenged by plaintiffs under § 54.1 in the theaters built or remodeled after 1982 have recently been removed in eight such theaters and are in the process of being removed in three more. Decl. of Robert Vallone. As a consequence, defendant contends that plaintiffs' claims for injunctive relief under § 54.1 are "largely" moot. Defendant argues that, in light of this alleged mooting, plaintiffs' remaining § 54.1 damage claims—which arise from past visits by class members to these recently modified theaters—certainly "predominate" over their claims for injunctive and declaratory relief, thereby precluding certification of the damage claims under (b)(2). The Court concludes, however, that any such modifications do not preclude (b)(2) certification of the § 54.1 damage claims.

First, defendant does not even claim that plaintiffs' § 54.1 claims for injunctive relief have actually been rendered moot. Rather, defendant contends only that most of the challenged design features have been remedied at eight of the UA theaters that are covered by the Title 24 regulations. Second, and more importantly, even if the challenged design features had been fully remedied in all of the theaters built or remodeled since 1982, such "mootness" would pose no obstacle to (b)(2) certification.

The basic nature of a ... suit is not altered merely because the [defendant's] change of discriminatory policy prior to [adjudication of the merits of the lawsuit] has obviated the need for injunctive relief. The conduct of the [defendant] is still answerable "on grounds generally applicable to the class," and the relief sought is still

"relief with respect to the class as a whole" [as required under (b)(2)]. The cohesive characteristics of the class are the vital core of a (b)(2) action. Functionally, these characteristics of the class are still intact in the suit. Nothing has changed to require the procedural protections of (b)(3) to determine the presence or absence of liability.

*Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 251 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). *Accord Arkansas Educ. Ass'n v. Board of Educ.,* 446 F.2d 763, 768–69 (8th Cir.1971) ((b)(2) certification of damage claims still appropriate despite mooting of claims for injunctive relief subsequent to filing of complaint); *Rodgers v. U.S. Steel Corp.,* 69 F.R.D. 382, 386–87 (W.D.Pa.1975) (same). To hold otherwise would mean that a defendant who had violated the law could gain a litigation advantage by modifying the challenged practices between the date the complaint was filed and the class certification motion was brought. The Rules Advisory Committee that drafted subpart (b)(2) cannot have intended for the availability of the (b)(2) form to be vulnerable to such manipulations.

In light of the foregoing, the Court concludes that, with respect to the design features challenged under plaintiffs' claims under both California Civil Code § 54.1 and the ADA, defendant has "acted ... on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." Fed.R.Civ.P. 23(b)(2). Thus, plaintiffs' § 54.1 and ADA claims satisfy the requirements for class certification pursuant to subpart (b)(2).

### 3. DEFENDANT'S OTHER ARGUMENTS AGAINST CERTIFICATION UNDER (b)(2)

■ Defendant raises several other objections to certification of plaintiffs' claims under subpart (b)(2). Although most of these arguments are without merit and warrant no discussion, two have substance. Both objections challenge plaintiffs' proposed class definition as encompassing categories of claims that are, as a matter of law, not actionable. The first concerns whether the ADA requires that places of public accommodation provide special seating for semi-ambulatory persons. Defendant asserts that it does not, and plaintiffs do not take issue with that contention in their reply papers. Concluding that the ADA imposes no specific requirements regarding semi-ambulatory seating, the Court shall strike such references from the class definition.

■ Defendant's second objection focuses on plaintiffs' inclusion of companions of disabled movie-goers in the class definition. Plaintiffs seek certification of this suit as a class action with the plaintiff class defined as including, among others, "attendants, family members or friends" of disabled persons who regularly accompany disabled persons out of their homes. Defendant argues that, as a matter of law, such persons have no cause of action under either § 54.1 or the ADA. In their reply papers, plaintiffs do not address the ADA issue, arguing only that companions may sue under § 54.1. This is probably because assertion of ADA claims on behalf of companions would make little practical difference in this case, since plaintiffs seek only injunctive relief under the ADA. If, however, companions could sue for damages under § 54.1, that would, of course, make a difference, for it would increase defendant's liability for incidents in which a disabled person afforded inadequate accommodations at one of defendant's theaters was accompanied by a non-disabled companion whose ability to attend the film with his or her disabled companion was consequently infringed as well.[7]

Whether companions of disabled persons may assert a cause of action for damages

---

7. Plaintiffs have also sued under the Unruh Civil Rights Act, California Civil Code § 51 *et seq.,* under which damages are available for statutory violations. However, as noted above, as a consequence of the Court's ruling in its August 11, 1993 order, plaintiffs' disability access claims challenging architectural barriers are not action-able under § 51, at least insofar as they concern theaters built or last remodeled before January 1993. *See supra* note 1. Thus, the availability of companion claims is of practical importance only as regards plaintiffs' claim for damages under California Civil Code § 54.1.

under § 54.1 appears to be a question of first impression. In urging the Court to construe this statute as encompassing companion claims, plaintiffs cite race discrimination cases in which courts have held that white persons may sue under the federal civil rights laws where either they themselves are discriminated against because of their association with members of a protected minority class, or where they are otherwise adversely affected by discrimination directed against minorities. *See, e.g., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (white tenants have standing under Title VIII of the 1968 Fair Housing Act to sue where race discrimination deprived them of opportunity to live in an integrated environment); *Woods–Drake v. Lundy,* 667 F.2d 1198, 1201–02 (5th Cir.1982) (white tenant evicted for entertaining a black guest has cause of action under 42 U.S.C. § 1982). Plaintiffs then cite principles of statutory construction holding that California civil rights laws are to be interpreted "in the broadest sense reasonably possible," *Isbister v. Boys' Club of Santa Cruz, Inc.,* 40 Cal.3d 72, 76, 219 Cal.Rptr. 150, 707 P.2d 212 (1985), and that they should be interpreted as "part of a large body of legislation that has been enacted at the federal and state levels." *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1173, 278 Cal.Rptr. 614, 805 P.2d 873 (1991). They argue that this interpretive canon requires that California Civil Code § 54.1 be construed as extending a claim for damages to companions of disabled persons.

■ California courts have instructed that where the words of a California statute are not ambiguous and their plain meaning can be given effect, that meaning should control; only where statutory text is ambiguous and does not resolve the issue in question should courts consult the variety of canons and rules of statutory construction that California courts have prescribed for application in different contexts. *Estate of Wilson,* 265 Cal.App.2d 943, 950, 71 Cal.Rptr. 822 (1 Dist. 1968) (citing *County of Sacramento v. Hickman,* 66 Cal.2d 841, 59 Cal.Rptr. 609, 428 P.2d 593 (1967)).

The text of § 54.1 reads, in pertinent part:

Individuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all ... places of public accommodation, amusement, or resort....

Section 54.3, the code section providing for a damage remedy for violations of § 54.1 reads, also in pertinent part:

Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights ... of an individual with a disability under Sections 54, 54.1 and 54.2 is liable for each ... offense for [certain damages], suffered by any person denied any of the rights provided in Sections 54, 54.1, and 54.2.

Although its text does not say so in so many words, the clear inference supported by § 54.3 is that the liability for damages created under the code section may run only in favor of a party who has had her rights under the referenced antecedent code sections violated. This means that, for present purposes, only persons in whom § 54.1 vests rights may sue for damages under § 54.3. The most natural reading of § 54.1 is that the provision vests rights only in "individuals with disabilities." In view of that fact, the Court concludes that it is the plain meaning of § 54.3 that the provision confers a cause of action only on disabled persons injured by disability access violations.

This conclusion is reinforced when one compares the language of § 54.3 with that of § 55, the code section vesting certain persons with a cause of action for *injunctive* relief for violations of California disability access standards. Section 55 provides, in pertinent part:

*Any person who is aggrieved or potentially aggrieved* by a violation of Section 54 or 54.1 of this code [or various other provisions] may bring an action to enjoin the violation.

(Emphasis added). Unlike § 54.3 which limits its remedy to damages suffered by persons vested with rights under § 54.1, § 55 extends to all persons *aggrieved* (or even potentially aggrieved) by violations of § 54.1

the right to sue. The § 55 formulation gives rise to the possibility that even persons who are not themselves vested with rights under § 54.1 may still be injured by violations of others' § 54.1 rights such that they may be deemed to be "aggrieved" within the meaning of § 55, and therefore entitled to sue.

The broader language of § 55 resembles that of the federal Fair Housing Act that the Supreme Court construed as conferring a cause of action on white persons harmed as a secondary consequence of housing discrimination against blacks. Like § 55's designation of "Any person who is aggrieved or potentially aggrieved," the Fair Housing Act authorized "Any person ... injured by a discriminatory housing practice" to pursue various remedial avenues available under the statute. Fair Housing Act of 1968, § 810(a), 42 U.S.C. § 3610(a) (1982).[8] The broader language of § 55 and the federal housing statute can plausibly be construed as creating a claim for relief on behalf of persons who are "aggrieved" as a secondary consequence a defendant's acts of prohibited discrimination directed against persons belonging to a class protected under the statute. The fact that the California Legislature included no such broader language in § 54.3 further reinforces the inference that the provision was not meant to confer a cause of action for damages on non-disabled companions indirectly aggrieved by disability access violations. Thus, the Court concludes that non-disabled companions of disabled persons cannot state a claim for damages under California Civil Code § 54.1 and § 54.3. The Court shall therefore strike such references from the class definition.

For the foregoing reasons, the Court concludes: (1) that plaintiffs have satisfied the requirements for class certification of subpart (a) of Rule 23; (2) that plaintiffs' federal and California law claims satisfy the requirements of, and therefore qualify for certification as a class action under, subpart (b)(2) of Rule 23; and (3) that plaintiffs' claims under the ADA for special seating for semi-ambulatory persons, and plaintiffs' claims under

California Civil Code § 54.1 on behalf of companions of disabled persons, fail to state a claim and so must be stricken from the proposed class definition.

## II. PLAINTIFFS' MOTION TO BIFURCATE TRIAL

### A. NATURE OF THE MOTION

Plaintiffs have also moved to bifurcate the trial of the issues of liability, injunctive relief, and damages to the named class representatives, from the trial of damages to the class. The trial they propose would proceed as follows:

*Stage One*

1. General liability to the class and equitable (injunctive and declaratory) relief issues.

2. Damage claims of the named class representatives.

*Stage Two*

1. Class damages.

Defendant UA and the third-party defendant architectural design firms oppose this motion.

### B. LEGAL STANDARD

Under Fed.R.Civ.P. 42(b),

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition or economy, may order a separate trial of any claim, cross-claim, or third-party claim, or of any separate issues or of any number of claims, cross-claims, counterclaims, third-party claims, or issues....

The decision whether to bifurcate a trial under Rule 42(b) is committed to the sound discretion of the district court. *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1517 (9th Cir.1985).

### C. DISCUSSION

According to the authors of the leading treatise on class actions, most courts adjudicating civil rights class actions in the

---

**8.** The text of 42 U.S.C. § 3610(a) quoted above was the version construed by the Supreme Court in *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). This provision was modified as part of the 1988 Fair Housing Amendments. *See* 42 U.S.C.A. §§ 3604, 3610(a) (Supp.1994).

employment discrimination context opt to bifurcate the liability and damages phases of the trial. 5 H. Newberg, *Class Actions* § 24.123, at 24–414–416 (3d ed. 1992). *See, e.g., Teamsters v. United States,* 431 U.S. 324, 360–62, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24 (N.D.Cal.1977); *Barefield v. Chevron,* 1988 WL 188433, 1988 U.S.Dist. LEXIS 15816, 48 Fair Empl.Cas. (BNA) 907 (N.D.Cal.1988).

A scholarly authority on pre-trial procedure counsels that the following factors should be considered in assessing whether bifurcation is appropriate: (1) the complexity of the issues; (2) whether there would be a risk of jury misunderstanding in a non-bifurcated trial; (3) whether bifurcation would facilitate disposition of the issues; and (4) whether bifurcation would prejudice either of the parties. Schwarzer, Tashima & Wagstaffe, *Cal.Prac.Guide: Fed.Civ.Proc. Before Trial* ¶ 16:164 (TRG 1993). This suit plainly involves highly complex issues of both California and federal law. A jury trial is likely, as the California law claims carry with them that right. The Court concludes that a unitary trial in which fact issues pertaining to both liability and class damages were combined would be substantially more complicated than a bifurcated trial, and would consequently increase the risk of jury misunderstanding.

Although defendant states that it does not oppose all forms of bifurcation, UA opposes the Court's ordering bifurcation at this time. However, the arguments defendant advances in opposition to bifurcation are really objections to class certification of the damage claims under Rule 23(b)(2). Those arguments aside, defendant's chief remaining objection is that the bifurcation motion is premature. However, the arguments UA advances in support of that contention are not persuasive. More importantly, defendant fails to allege any way in which it would be prejudiced by a bifurcated trial.

The third-party defendant architectural design firms raise a variety of objections to bifurcation, none of which has any substance. For example, the architects contend that "the question of damages is so interwoven with the question of liability" in this case that bifurcation of the liability and class damages trials would require two different juries to decide overlapping issues, thereby allegedly violating defendant's Seventh Amendment right to jury trial. In fact, the issues to be decided in determining liability and damages in this case are about as distinct as they can be. Liability hinges on questions of law and fact pertaining to what the accommodations at the various theaters have been like during the relevant period and whether such accommodations are legally adequate. In contrast, class damages depend on how many times a given class member attended or attempted to attend a given theater, previously determined during the liability stage to have been in violation of the law at the particular time in question. Contrary to third-party defendants' contentions, issues of discriminatory or malicious intent on the part of UA are largely irrelevant to *both* the liability and damages issues of this case, and so would not overlap the two phases. Intent is entirely irrelevant to determination of class damages, for the $250 statutory minimum damages that plaintiffs seek for each violation is available as a matter of right for all § 54.1 claims on which liability is established. Nor is intent an element of either of plaintiffs' chief causes of action, § 54.1 and the ADA. *See Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168, 176–80 266 Cal.Rptr. 804, 808–11 (1st Dist.1990) (intent need not be shown in order to obtain damages under § 54.3 for violation of § 54.1 standards); *Mayberry v. Von Valtier,* 843 F.Supp. 1160 (E.D.Mich.1994) (intent to discriminate not an element of a violation of the Americans with Disabilities Act).

Defendant and third-party defendants have identified no substantive prejudice that would result from bifurcation. Moreover, bifurcation would facilitate disposition of the issues since, as a practical matter, when liability is found during an initial phase, bifurcated cases often settle, thereby obviating the need for adjudicating issues of class damages. In light of the foregoing, the Court concludes that bifurcation of the adjudication of the issues of liability, injunctive and declaratory relief, and damages to the named

460

plaintiffs, from the adjudication of class damages is appropriate.

■ In the event that the parties exercise their right to jury trial for both stages of the case, the Court anticipates that separate juries will hear the two phases. It is constitutionally permissible for separate juries to hear the two phases of a bifurcated trial, *Arthur Young & Co. v. U.S. District Court,* 549 F.2d 686, 693 (9th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977); *In re Shell Oil Refinery,* 136 F.R.D. 588, 596 (E.D.La.1991), and the Court believes that structuring the trial of this case so as not to require that the two phases necessarily be tried back-to-back is sensible as it will afford the parties and the Court flexibility.

## III. CONCLUSION

For the foregoing reasons, and good cause appearing therefor, it is HEREBY ORDERED that plaintiffs' motion under Rule 23(b)(2) to enlarge the class certification is GRANTED. Named plaintiffs Connie Arnold, Ann Cupulo, Howard Ripley, Julianna Cyril, and Cynde Soto are certified as representatives of the class defined as follows:

A. All persons who are currently being denied full and equal access, under Title III of the Americans with Disabilities Act of 1990, Pub.L. No. 101–336, 42 U.S.C. § 12101 *et seq.,* and regulations promulgated thereunder and codified at 28 C.F.R. part 36, to one or more of defendant's theaters in California because they are persons with disabilities who use wheelchairs for mobility or are semi-ambulatory and are aggrieved by one or more of the following access barriers at any such theater:

1. Lack of wheelchair seating that meets access requirements;

2. Path of travel barriers to and/or within these facilities;

3. Lack of required access to and/or within these facilities.

B. All persons who have been denied full and equal access to one or more of defendant's movie theater facilities in California which have been constructed, renovated, and/or remodeled since July

1982, during the period of time from three years prior to the date of filing of the initial complaint in this action to the conclusion of this action, because they:

1. Were persons with a disability who use a wheelchair for mobility and/or are semi-ambulatory; and

2. Entered and utilized, or attempted to enter and utilize, one or more of these theater complexes' facilities.

It is FURTHER ORDERED that plaintiffs' motion to bifurcate the trial is GRANTED. This case shall proceed in two phases. Issues of liability, injunctive and declaratory relief, and damages to the named plaintiffs shall be adjudicated during a first phase; if liability is found, the issue of class damages shall be adjudicated during a second phase.

It is FURTHER ORDERED that the parties shall appear before the Court for a status conference on May 17, 1994, at 3:00 p.m.

**IT IS SO ORDERED.**

*MEMORANDUM OPINION AND ORDER ON MOTION TO RECONSIDER OR CERTIFY FOR INTERLOCUTORY APPEAL*

This case is a suit by disabled persons who use wheelchairs or who walk using aids such as crutches, brought against United Artists Theatre Circuit, Inc. ("United Artists" or "UA"). Plaintiffs charge that defendant's movie theaters do not afford disabled persons full and equal access to their accommodations, in violation of California and federal law.

In an order filed April 26, 1994, the Court granted plaintiffs' motion to certify the suit as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure ("Rules"). Defendant subsequently moved that the Court reconsider that ruling or, in the alternative, certify the Court's April 26 order for immediate interlocutory appeal. Oral argument on these motions was heard on July 25, 1994. After consideration of the parties' written and oral arguments, the Court DENIES both defendant's motion for reconsideration and its motion to certify an interlocutory appeal. However, the Court chooses to exercise its discretion to modify its previous

order so as to require that certain steps be taken to notify class members of the lawsuit and permit those that so desire to opt out of class adjudication of their damage claims. The reasons for these rulings are set forth below.

## FACTUAL BACKGROUND

Plaintiffs contend that at defendant's theaters, the accommodations for disabled persons who use wheelchairs or who walk using crutches did not on the date the suit was filed and do not presently meet the standards required under the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the California Disabled Persons Act, California Civil Code § 54.1 ("§ 54.1"). For both of these claims, plaintiffs seek declaratory and injunctive relief.

The access standards enforced under Cal.Civil Code § 54.1 are codified in Title 24 of the California Code of regulations ("Title 24 regulations"). These regulations apply to all theaters built or remodeled after the regulations' 1982 effective date and persons harmed by violations of these regulations are authorized to seek actual and treble damages, with a statutory minimum of $250 per violation. Plaintiffs seek the statutory minimum of $250 damages for each violation of the access standards suffered by class members.

## DISCUSSION

### I. PROPRIETY UNDER RULE 23(B)(2) OF THE COURT'S APRIL 26 CLASS CERTIFICATION

### A. UNDER BINDING NINTH CIRCUIT PRECEDENT AND OTHER PERSUASIVE AUTHORITY

The first ground on which defendant seeks reconsideration of the Court's April 26 order is its contention that certification of plaintiffs' damage claims is prohibited by Rule 23(b)(2) ("subpart (b)(2)" or "(b)(2)") itself. Defendant argues, as it did in its original briefing on the class certification motion, that the fact that plaintiffs' claims seek money damages, in addition to injunctive relief, renders them ineligible for (b)(2) certification.

Under Ninth Circuit precedent that is binding on this Court, "Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek *monetary damages." Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.) (citing *EEOC v. General Telephone Co.,* 599 F.2d 322, 334 (9th Cir.1979)), *cert. denied,* 476 U.S. 1170, 90 L.Ed.2d 978 (1986) (emphasis added). The definitive authority on the intended construction and application of the rule, the Rules Advisory Committee Notes to the 1966 Amendments to Rule 23 that added subpart (b)(2), clarify that a class may not be maintained under subpart (b)(2) where "the appropriate final relief relates exclusively or predominantly to money damages." *Rules Advisory Committee Notes to 1966 Amendments to Rule 23, reprinted at* 39 F.R.D. 69, 102 (1966). Thus, unimpeachable authority dictates that money damage claims may be certified under (b)(2) so long as the monetary claims do not "predominate" over the claims for declaratory or injunctive relief.

In civil rights actions such as Title VII employment discrimination suits, claims for monetary relief are routinely certified under (b)(2) where such claims are combined with ones for declaratory or injunctive relief. *See, e.g., EEOC v. General Telephone Co.,* 599 F.2d 322, 334 (9th Cir.1979); *see also Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 251 (3d Cir.) (gathering cases), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). In an attempt to distinguish this substantial body of authority approving (b)(2) certification of monetary claims in civil rights cases, defendant seizes on the fact that until it was amended by the 1991 Civil Rights Act, the only monetary relief available under Title VII was back-pay which, under the taxonomy of the common law system, is deemed to be an "equitable" remedy. In deciding whether monetary claims "predominate" in a given Title VII case, one court in another circuit has stressed the "equitable" categorization of the back-pay remedy. *See Wetzel,* 508 F.2d at 250–51. Defendant attempts to read this case for the proposition that *only* where

monetary relief is classified as *equitable* may monetary claims be certified under (b)(2).

The Court categorically rejects this contention. As noted above, the Ninth Circuit has stated expressly and unequivocally that, subject to the "predominance" limitation, claims for monetary relief may be certified under (b)(2) even where such relief is categorized as "legal" damages rather than "equitable" back-pay. *See Probe,* 780 F.2d at 780 ("Class actions certified under Rule 23(b)(2) ... may include cases that also seek *monetary damages*.") (emphasis added) (affirming (b)(2) certification of claims under the Equal Pay Act seeking money damages); *see also Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 928 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982) ("[T]his court has adopted the view that *legal remedies* which are incidental to a request for injunctive relief may be included as a part of the (b)(2) claim.") (emphasis added) (citing other cases). Moreover, the fact that the Rules Advisory Committee Notes to the 1966 Amendments to Rule 23 exclude from certification under (b)(2) claims "exclusively or predominantly [for] money damages" necessarily implies that claims for money damages that do not predominate *may* be certified. *Rules Advisory Committee Notes to 1966 Amendments to Rule 23,* 39 F.R.D. at 102.

In an attempt to explain why the legal/equitable distinction is of any relevance in determining whether a claim seeking monetary relief may be certified under (b)(2), defendant (1) asserts that the availability of equitable relief such as back-pay is committed to the discretion of the district court, and (2) argues that it follows from that alleged fact that back-pay claims are less likely to "predominate" over accompanying injunctive relief claims than are claims for legal damages. However, this argument fails on its premise for as plaintiffs correctly note, a court's discretion under Title VII to deny back-pay is extremely limited. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975).

As the Court explained at length in its April 26 order, the Court concludes that in applying the "predominance test" to determine whether claims for monetary relief may be certified under (b)(2), the cohesiveness of the class and the homogeneity of the members' interests are the salient factors on which the availability of the (b)(2) class action form hinges. *See* Apr. 26, 1994 order, slip op. at 23–26. As the court also explained, applying this standard in this case, it is clear that the instant class is highly cohesive and the members' interest extraordinarily homogenous. Indeed, it is difficult to conceive of a type of harm more homogenous than the effects of architectural and other physical barriers on a class of disabled theater-goers who use wheelchairs or who walk with crutches. Such challenged features clearly affect all classmembers in roughly the same way.

It is well-established that Title VII back-pay claims may be certified under (b)(2) even though each class-member's entitlement to back-pay and the actual quantum owed usually involve complicated, individual-specific inquiries.[1] In sharp contrast, in this case plaintiffs seek only the statutory minimum of $250 damages for each violation. Thus, the civil rights class claims for monetary relief presented in this case are some of the *least* individual-specific imaginable. If Title VII back-pay claims may be certified under (b)(2) then, *a fortiori*, the instant claims may certainly be certified as well.

## B. UNDER THE SUPREME COURT'S OPINION IN *TICOR TITLE INSURANCE CO. V. BROWN*

In addition to its legal/equitable argument, defendant urges that the Court should disregard binding circuit precedent authorizing (b)(2) certification of money damage claims because of language contained in the Supreme Court's recent opinion in *Ticor Title Ins. Co. v. Brown,* —— U.S. ——, 114 S.Ct. 1359, 128 L.Ed.2d 33 (1994). *Ticor* was brought by a plaintiff who had been an absent member of a class action brought by the

---

1. Granting back-pay in a Title VII case requires determining where a plaintiff would have been employed, for how long, and at what pay level, but-for the unlawful discrimination. In addition, there are a variety of other individual-specific affirmative defenses that the employer may raise.

Federal Trade Commission over price-fixing in the title insurance industry. *In re Real Estate Title and Settlement Services Antitrust Litigation,* 1986–1 Trade Cas. (CCH) ¶ 67,149, 1986 WL 6531 (E.D.Pa.1986), *aff'd without opinion,* 815 F.2d 695 (3d Cir.1987), *cert. denied,* 485 U.S. 909, 108 S.Ct. 1085, 99 L.Ed.2d 243 (1988). The *In re Real Estate* class action had been certified under (b)(1) and (b)(2), neither of which require notice to absent classmembers. After that judgment was final, the plaintiff filed the new *Ticor* suit in Arizona federal court raising the same claims. The district court granted summary judgment for the defendants on *res judicata* grounds. On appeal, the Ninth Circuit ruled that due process prohibited the district court from giving *res judicata* effect to the judgment in the earlier Third Circuit class action, as the plaintiff had not had notice of that suit and an opportunity to opt-out. *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 392 (9th Cir.1992). The Supreme Court granted certiorari to review this ruling that, under certain circumstances, it violates the due process rights of the absent members of a (b)(2) class to litigate their damage claims without giving them notice and a chance to opt out—procedural protections that are required under (b)(3) but not under (b)(2).

Several months later, however, the Court dismissed the writ of certiorari as improvidently granted. In an accompanying opinion, the court explained that the constitutional issue might not have to be reached if it turned out that (b)(2) itself forbids certification of claims for money damages. The Court acknowledged that certain plaintiffs had on that ground objected to certification in the Third Circuit litigation, that that argument had been rejected, and that that ruling was *res judicata* and—unlike the constitutional one—could not be relitigated in the new Ninth Circuit lawsuit. Nonetheless, because the constitutional issue would not have to be reached if it turned out that such certification was prohibited under (b)(2) itself, the Court decided that the issue was not cert.-worthy because "there is at least a substantial possibility" that "in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3), which permits opt-out, and not under Rules 23(b)(1) and (b)(2),

which do not." *Ticor,* —— U.S. at ——, 114 S.Ct. at 1361.

▉ Defendant urges the Court, based on this language, to rule that subpart (b)(2) does not permit class certification of claims for which monetary damages are sought. The Court concludes, however, that the Supreme Court's *Ticor* opinion should not alter the Court's treatment of the issues in this case. First, the Supreme Court's discussion does not specify whether there is a "substantial possibility" that no monetary damage claims whatsoever may ever be certified under (b)(2), or simply that such claims may not be certified where they predominate. Second, and more importantly, the Supreme Court's discussion was not holding, or even dictum, but simply a hint contained in an order dismissing a grant of certiorari. Under the law of the circuit doctrine, this Court is bound to follow Ninth Circuit authority until such precedent is overruled by an intervening Supreme Court opinion, by an *en banc* panel of the circuit, or by a controlling Act of Congress. *United States v. Edwards,* 13 F.3d 291, 294 (9th Cir.1993). The equivocal hint contained in this Supreme Court opinion does not constitute a ruling of the sort that would entitle this Court to disregard circuit precedent. Since Ninth Circuit precedent permits certification of monetary claims under (b)(2) so long as they do not predominate, this Court should and must apply that standard in this case.

## II. CONSTITUTIONALITY OF THE COURT'S APRIL 26 CLASS CERTIFICATION

▉ In addition to arguing that the Court's April 26 class certification order in this case violates (b)(2) itself, defendant charges that the Court's certification of plaintiffs' damage claims under (b)(2) was unconstitutional. As noted above, in its opinion in *Ticor,* the Ninth Circuit held that, under certain circumstances, it violates due process to litigate damage claims of absent class members without giving them notice and a chance to opt out. *Ticor,* 982 F.2d at 392. Although some of the opinion's language is a little broad and imprecise, the opinion relies entirely on *Phillips Petroleum*

*Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), in which the Supreme Court held that, in order to bind *known plaintiffs* concerning *claims wholly or predominantly for monetary damages,* minimal due process—meaning notice and an opportunity to be heard and to participate in the litigation—must be provided. *Id.* at 812 & n. 3, 105 S.Ct. at 2974 & n. 3. As *Ticor* explicitly acknowledges and stresses, "*Shutts* is limited to claims 'wholly or predominantly for money damages.'" *Ticor,* 982 F.2d at 392 (quoting *Shutts,* 472 U.S. at 811 n. 3, 105 S.Ct. at 2974 n. 3). Thus, it seems clear that under *Ticor* and *Shutts,* the constitutional due process requirement of notice to absent classmembers applies *only* to cases where claims for monetary damages "predominate." The only reported case that the Court has found interpreting *Ticor's* holding on this point reaches this same conclusion. *See White v. National Football League,* 822 F.Supp. 1389, 1412 (D.Minn.1993). Since, under the law of this circuit, (b)(2) certification is permitted only where monetary damage claims *do not* predominate, *Ticor's* due process-based holding adds nothing to the limits on the availability of the (b)(2) form that are already imposed by the rule itself.

Defendant also invokes *Johnson v. General Motors Corp.,* 598 F.2d 432 (5th Cir.1979), a Fifth Circuit Title VII case that appears to hold that notice is required for *all* monetary claims certified under (b)(2). *Id.* at 436–37. However, this holding runs contrary to prevailing precedent in virtually all of the other circuits which authorize adjudication of Title VII monetary relief claims under (b)(2) and which make no mention of any additional, constitutionally-mandated notice requirement. Binding Ninth Circuit precedent permits adjudication of claims for monetary relief under (b)(2), and the Court interprets the Ninth Circuit's *Ticor* opinion as holding that due process requires additional safeguards only where monetary claims "predominate." Defendant, relying on a precedent from an-

other circuit that reflects a minority view, urges the Court to recognize a new requirement that would apply to *all* class actions involving monetary claims. This the Court declines to do.

## III. MODIFICATION OF THE COURT'S APRIL 26 CLASS CERTIFICATION ORDER

For the above reasons, the Court adheres to its conclusion in its April 26 order that where, as here, a lawsuit (1) combines claims for monetary relief with claims for declaratory or injunctive relief, and (2) the monetary claims do not "predominate," class certification is appropriate under (b)(2). The Court further holds that in such cases, no additional notice or chance to opt-out is required in order to satisfy due process requirements.

 The Court notes, however, that under Rule 23(d)(2),[2] the Court is vested with the discretion to require notice or other procedural safeguards that are not otherwise mandated under Rule 23 or under the Constitution. *Penson v. Terminal Transport Co.,* 634 F.2d 989, 993 (5th Cir.1981); 2 H. Newberg, *Class Actions* § 8.15 (3d ed. 1992). Such discretionary notice may be required whenever the court deems it appropriate. *Id.* As such notice is not mandated by law, it need not conform to the stringent notice requirements of Rule 23(c)(2) that govern suits certified under Rule 23(b)(3). Rather, the stringency of the procedures by which discretionary notice should be effected is a matter equally within the discretion of the district court. 2 H. Newberg, *Class Actions* § 8.13, at 8–44. Typically, published or other general notice is permitted to suffice in such circumstances rather than actual individual notice. *See id.*

 After consideration of all the facts and circumstances of this case, the Court chooses to exercise its discretion under Rule 23(d)(2) to require that notice and an oppor-

---

2. In the conduct of actions to which this rule applies, the court may make appropriate orders: ... (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step of the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action.... Fed.R.Civ.P. 23(d).

tunity to opt out of class adjudication of the damage claims be provided to the members of the class certified under the Court's April 26 order. The Court contemplates employing published or other general notice. The parties are directed to meet and confer within 30 days of this order for the purpose of settling the particulars regarding this notice. The parties are directed to submit their proposed plan for effecting notice and a draft of their proposed text for the actual notice, to the Court for approval within 45 days of this order. If after substantial good faith efforts the parties are unable to agree between themselves on a plan for effecting notice and on the text of the notice itself, they should submit their respective proposals to the Court for reconciliation. Such resort to the Court for reconciliation, if necessary, shall also be made within 45 days of this order.

## IV. CERTIFICATION OF THE COURT'S APRIL 26 CLASS CERTIFICATION ORDER FOR INTERLOCUTORY APPELLATE REVIEW

 Defendant has moved that, in the event the Court declines to rescind its April 26 class certification order, the Court then certify that ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). An interlocutory order may be certified for immediate appeal where (1) the order involves a controlling question of law, as to which (2) there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026 (9th Cir.1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); 28 U.S.C. § 1292(b). In requesting certification of an interlocutory appeal, defendant focuses on the Court's ruling that Rule 23 permits certification of the instant damage claims under (b)(2). Again invoking the discussion found in the Supreme Court's opinion dismissing its grant of certiorari in *Ticor,* defendant argues that there exists substantial ground for difference of opinion regarding that ruling.

As discussed above, since well before *Ticor* it has been the law of this circuit—and, in-

deed, of virtually every circuit—that claims for monetary relief may be certified under (b)(2) so long as (1) claims for injunctive or declaratory relief are also present in the suit, and (2) the claims for monetary relief do not predominate. Under the law of the circuit doctrine, "[i]n the absence of an intervening Supreme Court decision or an Act of Congress that nullifies Ninth Circuit precedent, [subsequent Ninth Circuit panels] must adhere to the law of the circuit. . . ." *Edwards,* 13 F.3d at 294 (quoting *United States v. Frank,* 956 F.2d 872, 882 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 363, 121 L.Ed.2d 276 (1992)). The Supreme Court's statement in *Ticor* that "there is at least a substantial possibility" that "in actions seeking monetary damages, classes can be certified only under Rule 23(b)(3) . . . and not under Rules 23(b)(1) and (b)(2)," *Ticor,* —— U.S. at ——, 114 S.Ct. at 1361, is not holding, or even dictum, but simply a hint contained in an order dismissing a grant of certiorari. It is clear that these words would not be enough to entitle a Ninth Circuit panel to disregard what is otherwise binding circuit precedent. Thus, in order for defendant to prevail on the issue it seeks to raise on interlocutory appeal, it would be necessary for it either to convince an *en banc* panel of the court of appeals to reverse current circuit precedent, *see Morton v. De Oliveira,* 984 F.2d 289, 292 (9th Cir.) (absent an intervening Supreme Court decision, only an *en banc* court may overrule a prior decision of the court of appeals), *cert. denied sub nom. Carnival Cruise Lines v. Morton,* —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993), or else to win reversal by the Supreme Court on writ of certiorari. The Court holds that in a circumstance such as this, there cannot be said to exist a "substantial ground for difference of opinion" on the question at issue within the meaning of 28 U.S.C. § 1292(b). Where binding circuit authority settles the issue sought to be appealed then, by definition, no such substantial ground for difference of opinion exists.

Regarding other issues that defendant might appeal, the Court has explained above that it sees no colorable basis for contending that plaintiffs' claims for monetary relief predominate in this case, thus precluding (b)(2)

certification. As for the constitutionality of the class certification ordered in this case, the Court believes that in light of the discretionary class notice that the Court orders today, it is beyond doubt that the Court's certification order satisfies due process requirements. In light of the above, the Court cannot but conclude that defendant has failed to show a "substantial ground for difference of opinion" and thus has failed to show why certification of an interlocutory appeal would be appropriate.

Because of the Court's confidence that its class certification satisfies the requirements of Rule 23 and of the Constitution, the Court concludes additionally that an interlocutory appeal would not "materially advance the ultimate termination of the litigation." The Court does not believe that its class certification order is arguably incorrect and so does not believe that it would serve as an obstacle to settlement of this lawsuit. In view of the approximately two years of delay that would result from a § 1292(b) certification, it is clear that certification of an interlocutory appeal would slow rather than accelerate the ultimate termination of the litigation.

## V. CONCLUSION

For the foregoing reasons, it is HEREBY ORDERED that defendant's motion to reconsider or, in the alternative, certify the Court's April 26 order for interlocutory appeal is DENIED. It is FURTHER ORDERED that the Court's April 26 order is amended and modified as specified above in Part III of this order.

**IT IS SO ORDERED.**