354

COLORADO CROSS–DISABILITY CO-
ALITION and Julie Reiskin and Debbie
Lane, for themselves and all others simi-
larly situated, Plaintiffs,

v.

TACO BELL CORPORATION,
Defendant.

No. Civ.A. 97–B–2135.

United States District Court,
D. Colorado.

Feb. 3, 1999.

Timothy P. Fox, Amy F. Robertson, Kevin W. Williams, Mary Lou Mobley, for plaintiffs.

Gregory A. Eurich, Denver, CO, for defendant.

Stephen Taylor, for amicus curiae.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiffs Julie Reiskin (Ms. Reiskin) and Debbie Lane (Ms. Lane), who have disabilities requiring them to use wheelchairs for mobility, assert claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 (1998), and the Colo-rado Anti–Discrimination Act ("CADA"), C.R.S. §§ 24–34–601–24–34–605 (1998). Plaintiffs submit a motion to certify an ADA and CADA class action under Rule 23. After consideration of the motion, briefs, and counsels' arguments at the January 29, 1997 class certification hearing, I will grant the motion to certify a class action.

## I. FACTS

The following facts are undisputed unless otherwise stated. Ms. Reiskin and Ms. Lane have disabilities requiring them to use wheelchairs and/or scooters for mobility. Both lead extremely active lives. Ms. Reiskin is the executive director of plaintiff Colorado Cross–Disability Coalition ("CCDC"), a nonprofit organization advocating for people with disabilities. Ms. Lane is a full-time volunteer at CCDC. Ms. Reiskin and Ms. Lane enjoy many activities, including eating out at restaurants. Unlike people without disabilities, however, Ms. Reiskin and Ms. Lane cannot patronize the restaurants of defendant Taco Bell Corporation ("Taco Bell"). People without disabilities wait to place their orders in a designated "queue line," a path cordoned off with barriers causing patrons to form a single line. According to plaintiffs, 38 of Taco Bell's Colorado restaurants have lines too narrow to be accessed by wheelchairs or scooters because the lines are narrower than the specifications contained in the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36, Appendix A. (Plfs.' Ex. 1 ¶ 6; Plfs.' Ex. 2. ¶ 7.) Instead, according to Ms. Reiskin and Ms. Lane, they and many other persons who use wheelchairs or scooters are forced into a separate, segregated and inferior route to the service counter which, consistent with Taco Bell's company policy, is often blocked by a chain during busy hours. (Plfs.' Ex. 1 ¶¶ 6–7; Plfs.' Ex. 2 ¶ 5; Plfs.' Ex. 3 at 6.) Plaintiffs allege this "alternative wheelchair access" (1) is segregated from all other customers, (2) is frequently blocked by a chain, (3) makes it difficult or impossible for a person using a wheelchair or scooter to determine where they are in line with respect to non-disabled people standing in the queue line, (4) often angers non-disabled customers who believe that disabled patrons in the alternative wheelchair access are "cutting" in

line, and (5) frequently requires people who use wheelchairs or scooters to shout to get the attention of Taco Bell employees in order to receive service.

Plaintiffs contend that Taco Bell "has designed and constructed Taco Bell restaurants in Colorado for first occupancy after January 26, 1993 with queue lines that do not comply with the ADAAG." (Third Am. Class Action Compl. ¶ 59.) Plaintiffs have asserted similar claims under the CADA. *Id.* at ¶ 65. The ADA provides, in relevant part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). The CADA states:

> It is a discriminatory practice and unlawful for a person directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability, . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. . . .

C.R.S. § 24–34–601(2).

In their third amended class action complaint, plaintiffs seek an injunction requiring Taco Bell to comply with the ADA by removing or widening narrow queue lines, keep queue lines unobstructed by placards or other objects, and otherwise bring its restaurants into compliance with the ADAAG. (Third Am. Class Action Compl. ¶ 16.) Plaintiffs also seek damages of $50 for each instance of discrimination found to be in violation of the CADA, C.R.S. § 24–34–602. *Id.* Plaintiffs seek certification of a class pursuant to Rule 23 for violation of the ADA and the CADA. Plaintiffs also request that they be designated as representatives of the class.

## II. ANALYSIS OF CLASS CERTIFICATION PURSUANT TO RULE 23

### a. Legal Standards Applicable to Class Certification

To maintain a class action under Rule 23, plaintiffs must first satisfy the four prerequisites of Rule 23(a), which states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to the four prerequisites of Rule 23(a), plaintiffs must satisfy one of the three subsections of Rule 23(b).

██ Plaintiffs bear the burden of demonstrating that all the prerequisites for class designation are met. *Rex v. Owens ex rel. State of Oklahoma,* 585 F.2d 432, 435 (10th Cir.1978). Class action certification is discretionary with the trial court judge, *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982), and may be altered, expanded, subdivided or abandoned as the case develops. *Daigle v. Shell Oil Co.,* 133 F.R.D. 600, 602 (D.Colo.1990); *Dubin v. Miller,* 132 F.R.D. 269, 270–275 (D.Colo.1990). Because of the flexible nature of class certification, I am to favor the procedure. *Esplin v. Hirschi,* 402 F.2d 94, 99 & 101 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). I will certify, however, only after rigorous analysis of Rule 23 requirements. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Reed v. Bowen,* 849 F.2d 1307, 1309 (10th Cir.1988). In conducting my certification analysis, however, I may not consider the merits of the claim. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177–178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

### b. Identifying the Requested Class

██ Although not specifically mentioned in Rule 23, an essential prerequisite of an action under Rule 23 is the existence of an identifiable class. *Daigle,* 133 F.R.D. at 602; 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PRO-

CEDURE: CIVIL 2D § 1760 (2d ed.1990). A class is sufficiently defined if it is "administratively feasible for the court to determine whether a particular individual is a member." *Davoll v. Webb,* 160 F.R.D. 142, 143 (D.Colo. 1995). In their opening brief, plaintiffs modified the description of the class sought to be certified:

> All people within Colorado with disabilities who use wheelchairs or electric scooters for mobility who, beginning on the date two years prior to the filing of the Class Action Complaint, were discriminated against on the basis of disability by Taco Bell's failure to have queue lines that comply with the Americans with Disabilities Act Accessibility Guidelines in Colorado Taco Bell restaurants that Defendant owns, operates, leases to or leases from others.

(Plfs.' Opening Brf. at 5.) Taco Bell argues that the class definition contained in the Third Amended Class Action Complaint, rather than the modified class definition, is binding on plaintiffs. I disagree. I have discretion to alter, expand, subdivide or modify the class definition. *See Vaszlavik v. Storage Technology, Corp.,* 175 F.R.D. 672, 683 (D.Colo.1997); *West v. Capitol Federal Savings and Loan Ass'n,* 558 F.2d 977, 982 (10th Cir.1977) (class certification is a preliminary, interlocutory action subject to change before final disposition of the case). Considering counsels' arguments, and based on plaintiffs' representation that the scope of the class they seek to certify is limited to Colorado residents, I will consider, in my discretion, the following class definition:

> All Colorado residents with disabilities who use wheelchairs or electric scooters for mobility who, beginning on the date two years prior to the filing of the Class Action Complaint (October 1, 1997) were discriminated against on the basis of disability by Taco Bell's failure to have queue lines that comply with the Americans with Disabilities Act Accessibility Guidelines in Colorado Taco Bell restaurants that Defendant owns, operates, leases to or leases from others.

Taco Bell describes the class definition as "flawed" and overbroad because it seeks certification of "any Taco Bell restaurant" which includes franchised restaurants. (Def.'s Resp. Brf. at 9.) According to Taco Bell, it has no control over several of these franchised restaurants pursuant to 42 U.S.C. § 12181(a). It is an open question in the Tenth Circuit whether Taco Bell is liable for alleged ADA violations by franchised restaurants. Regardless, if a class is certified, further discovery concerning Taco Bell's relationship with, and control over, franchisees may reveal that it has ADA obligations concerning its franchised restaurants. This issue concerns the merits of plaintiffs' claims and, thus, it is irrelevant to class certification. *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140. ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). In any event, whether Taco Bell has ADA obligations concerning franchised restaurants is a question common to all class members. As an initial matter, I conclude that the proposed class definition, as modified here, is sufficiently defined so as to allow determination of whether a particular individual is a member. *See Davoll,* 160 F.R.D. at 143.

### c. The Four Prerequisites of Rule 23(a)

#### 1. *Numerosity*

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. A number of factors are relevant in determining whether joinder is impracticable, including the class size, the geographic diversity of class members, the relative ease or difficulty in identifying members of the class for joinder, the financial resources of class members, and the ability of class members to institute individual lawsuits. *Anderson v. Dept. of Public Welfare,* 1 F.Supp.2d 456, 461 (E.D.Pa.1998) (ADA class certified for participants in managed health care program with impairments which substantially limited mobility and/or vision); Robert Newberg, NEWBERG ON CLASS ACTIONS § 3.06 at 3–27–3–35 (3d ed.1992) (hereinafter, "Newberg"). Plaintiffs contend that

each of these factors demonstrate that joinder is impracticable in this case. I agree.

### i. Class Size

██ In determining class size, the exact number of potential members need not be shown. *Joseph v. General Motors Corp.*, 109 F.R.D. 635, 639 (D.Colo.1986). Rather, I may make "common sense assumptions" to support a finding that joinder would be impracticable. *Civic Ass'n of Deaf of New York City, Inc. v. Giuliani*, 915 F.Supp. 622, 632 (S.D.N.Y.1996); Newberg § 3.03 at 3–17 & n. 58.

Plaintiffs rely on survey results and census figures as evidence of numerosity. Census data are frequently relied on by courts in determining the size of proposed classes. *See, e.g., Anderson*, 1 F.Supp.2d at 461 (in ADA class action, "[census] statistics tending to show that joinder would be impracticable may be sufficient to satisfy Rule 23(a)(1)"); *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978) (numerosity requirement satisfied, in part, by census information), *cert. denied*, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373 (1979).

In this case, census data demonstrates that there are approximately 15,369 non-institutionalized people 16 years of age or older in Colorado who use wheelchairs. (Plf. Ex. 5 at 3.) This number does not include institutionalized people who use wheelchairs, people under the age of 16 years who use wheelchairs, or people who use scooters for mobility, all of whom are potential members of the class. Additionally, plaintiffs assert there have been more than 12 million customer transactions in Taco Bell's Colorado restaurants in each of the last three years, and all of Taco Bell's 38 restaurants have queue lines that are narrower than required by the ADAAG. (Plfs.' Reply Brf. at 4; Plfs.' Ex. 3 at 4.)

Including themselves, plaintiffs have identified 27 people who use wheelchairs or scooters who have been harmed by Taco Bell's alleged discriminatory queue lines. (Plfs.' Ex. 4 at 3.) Also, according to census information, 23.7% of people aged 15 to 64 years who use wheelchairs have household incomes below the poverty level, a much higher percentage than the overall population. (Plfs.' Ex. 6 at 33.) Thus, it can be inferred that many people who use wheelchairs may eat out at inexpensive, "fast food" restaurants like Taco Bell. (Plfs.' Ex. I ¶ 9.)

In response, Taco Bell points to a survey conducted by plaintiffs in which Taco Bell states that plaintiffs attempted to survey 2,000 CCDC members. Taco Bell emphasizes that plaintiffs have identified only 29 individuals who claim to have been injured at 30 different Taco Bell locations. From plaintiffs' contention that they represent a putative class of "more than 1,000," (Plfs.' Opening Brf. at 10–12). Taco Bell concludes that a group of 29 people is numerically insignificant to justify invoking the expensive class action machinery as an alternative superior to joinder. I disagree.

At the class certification hearing, plaintiffs clarified that approximately 200 CCDC members were contacted and responded to a survey concerning Taco Bell visits. Out of the approximately 200 people surveyed, 29 of them had experienced difficulty with the narrow queue lines. This represents 14.5% of the total number of people who responded, a significant percentage. Using "common sense assumptions," if I apply this percentage to the approximately 15,369 non-institutionalized people in Colorado who use wheelchairs, the potential class may include more than 2,000 people. It is clear, therefore, that plaintiffs have met their burden of showing numerosity.

### ii. Geographic Diversity

It is undisputed that the potential class covers at least the entire "front range" area. The fact that a class is dispersed over several counties weighs in favor of a finding of numerosity. *Anderson*, 1 F.Supp.2d at 461. Thus, I find that joinder of the proposed class would be difficult or impossible.

### iii. Identity of Class Members

There is no dispute in this case that the individual class members are difficult to identify. *See Phillips v. Joint Legislative Committee on Performance and Expenditure Review of State of Miss.*, 637 F.2d 1014, 1022

(5th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 483 (1982) (joinder impracticable in part because neither party could identify class members); *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 448 (N.D.Cal.1994) ("by the very nature" of the class of people with disabilities affected by defendant's architectural barriers, members were "unknown" and could not be "readily identified," making joinder impracticable.). *See, generally,* Newberg § 3.05 at 3–18–3–19 & ii.61.

### iv. Difficulty for Class Members to Bring Individual Suits

In this case, joinder is impracticable where it is difficult or impossible for class members to bring individual suits because, pursuant to the CADA, no attorney fees are recoverable and the most that an individual member could obtain in damages under this statute is $500. This amount is far too small to justify the costs of an individual suit where an estimated 23.7% of the potential class members have household incomes below the poverty level. (Plfs.' Ex. 6 at 33.) Thus, many class members have no economic incentive, or cannot afford, to bring individual actions. Moreover, one of the central tenets of Rule 23 is that a class action permits plaintiffs, if their claims for damages are too small to justify the costs of litigation, the ability to seek redress. *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 338 n. 9, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980); *see also Eisen,* 417 U.S. at 167–168, 94 S.Ct. 2140. For these reasons, I conclude that joinder is impracticable.

### 2. *Questions of Law or Fact Common to the Class*

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class which predominate over questions peculiar to individual members of the class. Not every issue must be common to the class so long as the claims of the plaintiffs and other class members are based on the same legal or remedial theory. *Joseph,* 109 F.R.D. at 639–640; *Cook v. Rockwell Int'l Corp.,* 181 F.R.D. 473, 480 (D.Colo.1998) (common questions "arise from the same set of broad circum-

stances" and do not create conflicts among class members).

Where a class of persons sharing a common disability complains of the identical architectural barrier based on the same alleged violations of law, commonality is unquestionably established. As stated by one court:

> Inadequate wheelchair accommodations at particular theaters are very likely to affect all wheelchair users in the same way.... Thus the state of such accommodations at defendant's various theaters, and the legal adequacy of those accommodations, are issues of fact and law common to all those disabled persons affected by them.

*Arnold,* 158 F.R.D. at 449.

Defendant claims that because the floor plans and occupancy dates differ among its Colorado restaurants, "case by case determinations" for each restaurant will be required. Therefore, commonality is not present. I disagree. This precise issue was addressed in *Arnold,* in which the court certified a class of disabled persons who sought removal of architectural barriers in theaters pursuant to the ADA. Despite the fact that there were more than 70 theaters at issue, the *Arnold* court held that the commonality requirement was met:

> It is true that members of the class will each likely have attended only certain of defendant's theaters. This means that, in a sense, the proposed class is divided into more than seventy subclasses composed of disabled persons challenging the adequacy of the accommodations at each of defendant's theaters in California.
>
> Addressing, for the time being, only the subclasses, it is quite clear that the commonality requirement is satisfied within each subclass. Within each subclass all of the issues presented are common ones, at least insofar as plaintiffs assert claims for injunctive relief Even with respect to damage claims, the most important issues—the state of accommodations at defendant's various theaters during the three year statute of limitations period prior to the filing of this suit, and the legal sufficiency thereof—are common to the subclass. The only damages issue not common to the subclass is the simple question of the num-

ber of instances that individual class members were aggrieved by inadequate accommodations at defendant's theaters during the period covered by the lawsuit.

\* \* \* \* \* \*

In light of the above, it is clear that, at the very least, the commonality requirement would be satisfied for certification of a class comprised of the seventy-odd subclasses. However, such is not necessary since, even among the subclasses, there exist sufficient common issues to meet the [Rule 23] subpart (a)(2) condition. As discussed above, the specific theater design features challenged by plaintiffs are ones, some or all of which, they allege exist or have existed in many if not all of defendant's theaters during the relevant period. From the fact that the same categories of design features are being challenged in each theater, it follows that the legality of those features are legal issues common to the claims of the members of all of the subclasses. In addition, where, as here, plaintiffs challenge conditions at several sites, all owned by a single corporate defendant, the legal standard applied under the ADA to evaluate the adequacy of the accommodations at each of the respective theaters is one that hinges, in part, on various corporation-wide factors such as the availability of resources. These are additional issues of fact and law common among the subclasses. In light of the foregoing, the Court concludes that the issues common to all of the members of the single proposed class are sufficient to satisfy [Rule 23] subpart (a)(2).

*Id.* at 449.

In this case, there appear to be only seven basic prototypes for Colorado restaurants that have inaccessible queue lines. (Plfs.' Attachment B at 19–31 (identifying the following prototypes used in Colorado with inaccessible queue lines: M60F, M90H, M70H, ST46, M70HD, ST I, and K50).) Despite the multiple prototypes, Taco Bell's restaurants could be divided easily into two subclasses based on the dates when they were first occupied or underwent alterations. Most, if not all, of Taco Bell's restaurants fall within the "new construction" and "alteration" stan-

dards of the ADA which require that queue lines in those restaurants must be made accessible without regard to any differences in floor plans or other factors.

If there are some Taco Bell restaurants that do not fall within the new construction or alteration standards ("unaltered restaurants"), Taco Bell is still required to widen or remove queue lines in these restaurants if doing so is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Determining whether widening or removing queue lines is readily achievable involves consideration of a number of factors, including Taco Bell's resources and the cost of widening queue lines. 42 U.S.C. § 12181(9). If the class is certified, additional discovery will determine the nature of the alterations performed at each restaurant and whether the alterations triggered ADA requirements to widen queue lines. For example, plaintiffs are aware that construction performed on one Taco Bell restaurant pursuant to the retrofit program was extensive and included installation of new queue lines. (Plfs.' Attachment B at 60; Plfs.' Attachment D at 1 (list of items used for Taco Bell restaurant renovation which includes new rails for queue lines).)

### 3. *Typicality of Claims*

Rule 23(a)(3) requires that the claims asserted by the representative plaintiffs be typical of the claims of the class. According to the Tenth Circuit, "the typicality requirement is ordinarily not argued. . . . It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir.1975).

The plaintiffs here suffer from disabilities which, although not identical, require the use of a wheelchair or scooter for mobility. Thus, the effect of the disability is shared by all class members. Further, the representative plaintiffs contest the legality of architectural barriers under the same statutes as the class. I conclude, therefore, that the claims of the representative plaintiffs are typical of the class. *See Arnold,* 158 F.R.D. at 450

("Indeed, in a public accommodations suit such as this one where disabled persons challenge the legal permissibility of architectural design features, the interests, injuries, and claims of the class members are, in truth, identical such that any class member could satisfy the typicality requirement for class representation."); *Civic Ass'n of the Deaf,* 915 F.Supp. at 633 (typicality exists where the representative plaintiffs, "like every other member of the proposed Class, are or represent deaf or hearing-impaired individuals."). Under these circumstances, the proposed class meets the typicality requirement of Rule 23(a)(3).

### 4. *Adequacy of Proposed Representative Plaintiffs*

The final requirement of Rule 23(a) is adequate representation. The parties do not dispute, and I agree, that the representative Plaintiffs have common interests with the class members and will vigorously prosecute the interests of the class through qualified counsel. *See Cook v. Rockwell Int'l Corp.,* 151 F.R.D. 378, 386 (D.Colo.1993) ("*Cook II*"); 2 Newberg § 7.24 at 7–80–7–81. For the reasons set forth above, the proposed class satisfies the four prerequisites of Rule 23(a).

### d. The Three Subsections of Rule 23(b)

Next, I determine whether this case fits within one of the three subsections of Rule 23(b). *See Joseph,* 109 F.R.D. at 638. Plaintiffs seek certification under subsection (b)(2) and (b)(3). Where, as here, plaintiffs seek class certification in the alternative under Rule 23(b)(2) and (b)(3), a mandatory (b)(2) class is preferred. *Cook II,* 151 F.R.D. at 388.

### 1. *Rule 23(b)(2)*

A class is proper under Rule 23(b)(2) if the party opposing the class "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ..." and the representatives are seeking "final injunctive relief or corresponding declaratory relief." A class action in which all members of the class complain of the identical architectural barrier necessarily involves acts that are generally applicable to the class. *Arnold,* 158 F.R.D. at 452 (where class members all challenged defendant's failure to change certain architectural features found at its theaters, and the challenged design features affected all class members in the same way, "this suit is a paradigm of the type of action for which the (b)(2) form was created."); *Civic Ass'n of the Deaf,* 915 F.Supp. at 634 ("Because the proposed removal of the street alarm boxes will ... require injunctive relief applicable to the class as a whole, Rule 23(b)(2) also applies to the class."). Indeed, the Advisory Committee Notes to the 1966 amendment to Rule 23 demonstrate that subsection (b)(2) was intended to reach precisely the type of class proposed in this case: "Illustrative are various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration."

Nor does the fact that the class also seeks monetary damages change this result. As long as the plaintiffs' primary claim is for injunctive relief, certification under Rule 23(b)(2) is proper. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986) (plaintiffs' request for damages as well as injunctive relief did not preclude maintenance of action as class action under Rule 23(b)(2) where the monetary claim was incidental to the primary claim for injunctive relief); *Jones v. Diamond,* 519 F.2d 1090, 1100 n. 17 (5th Cir. 1975); *Schreiber v. National Collegiate Athletic Ass'n,* 167 F.R.D. 169, 176 (D.Kan.1996). *See also* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1776 (2d ed.1990) (hereinafter, "Wright, Miller & Kane"). Plaintiffs allege that Taco Bell's narrow queue lines discriminate against all persons who use wheelchairs and scooters and, thus, Taco Bell has allegedly acted in a manner applicable to the entire class. Further, each class member seeks only $50, the minimum damages amount under the CADA. Thus,

the predominant relief sought by the proposed class in this case is injunctive.

### 2. *Rule 23(b)(3)*

Plaintiffs state that if certification of the proposed class is found to be inappropriate under Rule 23(b)(2), then the proposed class should be certified under Rule 23(b)(3). Certification is appropriate under Rule 23(b)(3) if: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane §§ 1777–1778. The following factors are relevant in determining whether these two requirements are met:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

According to Plaintiffs, the class members do not have an interest in individually controlling the prosecution or defense of separate actions. To the contrary, the amounts at stake for individuals are so small "that separate suits would be impracticable." Fed. R.Civ.P. 23, Advisory Committee Note to 1966 Amendment; *see also In re Amerifirst Securities Litigation,* 139 F.R.D. 423, 435 (S.D.Fla.1991) ("Individual interests may be minimal where, as here, the amounts at stake for each class member are so small that separate suits would be impractical.").

The second factor also weighs in favor of class certification as there is no other litigation pending concerning the controversy at issue in this litigation. This may suggest that the members of the class do not have the ability to prosecute individual actions.

Concentrating this litigation is also desirable. Unless these claims are heard in the aggregate, it is unlikely that individual claims will be brought in light of the small amounts at stake. In addition, the ADA class claim is brought pursuant to federal law which is well suited to be heard in this Court.

Finally, managing the class action will not be difficult. The individual damage claims are identical. Thus, the only class issue that must be determined is the number of instances of discrimination encountered by each class member. This situation was addressed by the *Thrope* court in which the class sought recovery of $5 for each time a member purchased a handicap parking placard. In certifying the class under Rule 23(b)(3), the court stated:

> The only individual issue to be determined relates to damages, namely, how many placards a class member purchased. Defendants do not identify what individual issues negate a finding of predominance.
>
> Moreover, the class action is the superior method of managing this dispute which involves a large number of class members who have a relatively small amount of individual damages. Providing a forum for small claimants is a relevant consideration in determining class certification under Rule 23(b)(3). "When the entire class is composed of small claimants, neither joinder nor intervention would be a realistic available alternative" and "denial of a class action would effectively exclude them from judicial redress." Here, the class action vehicle provides a realistic means of having each class member's claim addressed. Moreover, judicial economy is clearly advanced by the consolidation in one forum of 300,000 individual suits.

*Thrope v. State of Ohio,* 173 F.R.D. 483, 490–491 (S.D.Ohio 1997) (citations omitted); *see also Cook II,* 181 F.R.D. at 481 ("Class certification in this case is ... superior to the alternative of repeating, hundreds of times over, litigation of common issues.").

Here, there are a number of ways that a damages determination could be made. For example, after notice of the class action is disseminated, class members asserting a

claim may be required to complete an affidavit identifying the Taco Bell restaurant(s) at which, and the date(s) on which, they experienced discrimination as a result of Taco Bell's failure to widen or remove queue lines. I conclude that, in the alternative, the proposed class meets the requirements of Rule 23(b)(3) and should be certified pursuant to that rule even if the class was not certified pursuant to Rule 23(b)(2).

Accordingly, I ORDER that:

(1) plaintiffs' motion to certify an ADA/CADA class action is GRANTED;

(2) plaintiffs Julie Reiskin and Debbie Lane are hereby certified as representatives of the plaintiff class;

(3) the ADA/CADA plaintiff class shall consist of:

"All Colorado residents with disabilities who use wheelchairs or electric scooters for mobility who, beginning on the date two years prior to the filing of the Class Action Complaint (October 1, 1997), were discriminated against on the basis of disability by Taco Bell's failure to have queue lines that comply with the Americans with Disabilities Act Accessibility Guidelines in Colorado Taco Bell restaurants that Defendant owns, operates, leases to or leases from others.";

(4) plaintiffs shall filed a proposed form of notice by Monday, February 8, 1999 and defendant has 10 days to respond;

(5) the costs attendant to plaintiffs' ADA/CADA class certification shall be borne by plaintiffs; and

(6) defendant's: (a) reply to Plaintiffs' response to summary judgment motion; and (b) response to Plaintiffs' partial summary judgment motion is due by February 26, 1999; plaintiffs shall have 10 days to reply.