**Kirstin KURLANDER, on behalf of herself and others similarly situated, Plaintiff,**

**v.**

**KROENKE ARENA COMPANY, LLC, Defendant.**

Civil Action No. 16–cv–02754–WYD–NYW

United States District Court, D. Colorado.

Signed 08/31/2017

Amy Farr Robertson, Denver, CO, for Plaintiff.

Laura J. Hazen, Susan Penniman Klopman, H & K Law, LLC, Denver, CO, for Defendant.

## ORDER ON CLASS CERTIFICATION

WILEY Y. DANIEL, SENIOR
UNITED STATES DISTRICT JUDGE

## I. BACKGROUND

THIS MATTER is before the Court on Plaintiff's Motion for Class Certification filed March 22, 2017 (ECF No. 15). Defendant filed a Response (ECF No. 18) on April 20, 2017, and Plaintiff's Reply (ECF No. 25) was filed on May 19, 2017. On August 9, 2017, the Court heard arguments from both parties on Plaintiff's Motion for Class Certification. For the reasons set forth below, I find that the class shall be certified.

Plaintiff Kirstin Kurlander is a deaf woman who brings claims on behalf of herself and all others similarly situated for violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.* Plaintiff alleges that Defendant Kroenke Arena Company, LLC, the owner and operator of the Pepsi Center—an indoor arena in Denver, Colorado—discriminates against patrons who are deaf or hard of hearing by failing to offer open captioning on the center hung display or ribbon board displays ("Displays") during events when the Displays are used ("Display Events"). She seeks injunctive relief and reasonable attorneys' fees and costs.

In the instant motion, Plaintiff seeks to certify a class pursuant to Fed. R. Civ. P. 23 defined as follows:

> All Pepsi Center patrons who are deaf or hard of hearing and unable to hear using assistive listening devices, who have been, since November 10, 2014, or in the future will be, denied full and equal enjoyment of the goods, services, facilities, advantages, or accommodations of the Pepsi Center based on Defendant's failure to provide open captioning of aural content during non-concert events for which the center-hung display is used.

Plaintiff further seeks an order appointing herself as class representative, and her attorney, Amy Robertson of the Civil Rights Education and Enforcement Center, as class counsel. In support, Plaintiff has submitted the declarations of five other individuals who are deaf and enjoy attending events at the Pepsi Center.

The Pepsi Center, which was constructed in the late 1990s, and opened on October 1, 1999,[1] seats approximately 17,000 to

---

1. "Arena Facts," http://www.pepsicenter.com/
arena-info/pepsi-center/arena-facts/ (hereinaf-

ter "Arena Facts").

21,000 people, depending on the event and configuration. The Pepsi Center is home to the National Hockey League's Colorado Avalanche, the National Basketball Association's Denver Nuggets, and the National Lacrosse League's Colorado Mammoth, and is also the venue of a number of concerts and other events totaling approximately 200 events each year. Second Amended Class Action Complaint (ECF No. 14) ¶ 2; Answer to Second Amended Class Action Complaint ("Answer," ECF No. 16) ¶ 2. Defendant installed a new center-hung display at the Pepsi Center in 2013. Answer ¶ 3. Open captioning is not provided on the center-hung display, Answer ¶ 3, or on any other scoreboard or display generally visible to patrons, Decl. of Kirstin Kurlander ("Kurlander Decl.") ¶ 9.[2]

Many of the events at the Pepsi Center include both visual and aural content. For example, during a Colorado Avalanche ice hockey game, Pepsi Center patrons will not only be able to watch the players on the ice, they will hear the announcer introducing the players at the beginning of the game, telling them what penalties have been assessed during the game on which players, and announcing which player scored and which assisted following a goal. Similarly, Denver Nuggets fans will hear players being announced at the beginning of the game and when they enter and leave the game, fouls assessed against players and a running count of those fouls, and which players scored field goals and for how many points. Both hockey and basketball fans will also hear a good deal of non-game-related information at the Pepsi Center, for example, the presentation of the color guard and the national anthem,

other songs (with lyrics), player interviews, contests, and promotions. Decl. of Amy Robertson ("Robertson Decl.") ¶ 8. Plaintiff Kurlander is profoundly deaf and, as a result, relies on auxiliary aids and services, such as captioning, to receive aural information. Kurlander Decl. ¶ 2. Ms. Kurlander enjoys attending events at the Pepsi Center, and over the past few years, has attended a number of Mammoth lacrosse games, part of an Avalanche hockey game, a Harlem Globetrotters game, and several other events. Id. ¶¶ 3, 4, 11. When attending events at the Pepsi Center, she is unable to hear any aural content, including game information, announcements, music, and promotions. Id. ¶¶ 2, 7.

Title III of the ADA prohibits owners and operators of places of public accommodation such as the Pepsi Center from discriminating on the basis of disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(a). Such places are prohibited from affording people with disabilities "the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals," id. § 12182(b)(1)(A)(ii), and are required to provide "auxiliary aids and services" "as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals," id. § 12182(b)(2)(A)(iii), and to ensure "effective communication" with individuals with disabilities, 28 U.S.C. § 36.303(c)(1).

Plaintiff alleges that, because the "full and equal enjoyment" of the Pepsi Cen-

---

2. While the Displays do continuously provide text and game- and player-related information such as game scores, player names, numbers and statistics, team statistics, game time and time remaining, and, from time to time, key words used for crowd pumpers or promotions

(Affidavit of Stephen Johnston, ¶ 3), the Displays do not open caption aural content broadcast over the public address system. Captioning, however, is provided on the suite television monitors at the Pepsi Center. Defendant's Responses to Discovery at 2–3.

ter includes all of the aural information provided over the public address system during Display Events, effective communication for those who cannot hear that information requires open captioning. Plaintiff further argues that, without captioning of Display Events, deaf Pepsi Center patrons are provided services, privileges, advantages and accommodations that are not equal to those afforded hearing patrons, and are thus treated differently from them, in violation of §§ 12182(b)(1)(A)(ii) and 12182(b)(2)(A)(iii).

## II. ANALYSIS

■ Rule 23(a) of the Federal Rules of Civil Procedure governs class certification. Certification requires that the class meet all of the requirements of Rule 23(a) and one of the provisions of Rule 23(b). Fed. R. Civ. P. 23. A district court has broad discretion in determining whether a suit should proceed as a class action. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). "Because of the flexible nature of class certification, courts are to favor the procedure." *Lucas v. Kmart Corp.*, 99–CV–01923, 2005 WL 1648182, at *2 (D. Colo. July 13, 2005) (citing *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir.1968)). "Rule 23 does not set forth a mere pleading standard." *Warnick v. Dish Network, LLC*, 301 F.R.D. 551, 556 (D. Colo. 2014) (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)). Rather, Plaintiff must affirmatively demonstrate her compliance with the Rule and the court may probe behind the pleadings when necessary to determine the certification question. *Id.*

■ In ruling on a motion for class certification, the Court does not evaluate the underlying merits of the claim. *Lucas*, 2005 WL 1648182, at *2; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). While the

Court need not automatically rely on conclusory allegations parroting Rule 23, "the court should accept the allegations contained in the complaint as true." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n. 7 (10th Cir. 1999)). "In determining the propriety of a class action, the question is not whether the plaintiffs have stated a cause of action and will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

■ "The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Warnick*, 301 F.R.D. at 555 (quoting *Wal–Mart*, 564 U.S. at 348, 131 S.Ct. 2541). To justify a departure from that rule, " 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.' " *Colorado Cross–Disability Coalition v. Abercrombie & Fitch*, 765 F.3d 1205, 1213 (10th Cir. 2014) ("*Abercrombie*") (citing *Wal–Mart*, 564 U.S. at 348–49, 131 S.Ct. 2541).

Defendant has raised two issues that I will address before analyzing the requirements of Rule 23: whether Plaintiff has standing to sue, and whether the class described above is sufficiently ascertainable.

### A. Standing

■ Standing is a threshold matter bearing upon the court's subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Plaintiff carries the burden to prove standing. *Id.* at 561, 112 S.Ct. 2130. To demonstrate standing to sue for injunctive relief, "a plaintiff must suffer an 'injury in fact' that is actual or imminent.... [t]he injury must be fairly traceable to the challenged action of the defen-

dant.... [and] it must be likely that the injury will be redressed by the relief requested." *Abercrombie*, 765 F.3d at 1210–11 (citing *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130). Defendant only challenges the first and third of these prongs; it does not challenge causation.

■■■ Defendant argues that because Plaintiff is able to communicate through sign language and has utilized sign language services provided by Defendant and because Defendant provides closed captioning on hand-held devices, Plaintiff has failed to establish any injury. Defendant further argues that Plaintiff does not have a legally-protected interest in receiving open captioning because Title III of the ADA does not mandate a particular form of auxiliary aids. *See, e.g.*, 28 C.F.R. § 36.303(c) (providing that public accommodations are to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities.") Thus, Defendant's position is that it does provide appropriate auxiliary aids and services in accordance with Title III of the ADA including captioning but just not captioning in the form Plaintiff desires. As such, Defendant asserts that Plaintiff has conflated the requested remedy with the alleged injury.

Plaintiff argues that Defendant's argument improperly imports the merits into the standing analysis, and I agree. *See, e.g., WildEarth Guardians v. U.S. Env't'l Protection Agency*, 759 F.3d 1196, 1207 (10th Cir. 2014) ("For purposes of standing, we must assume the Plaintiffs' claim has legal validity."). I find that Plaintiff has standing because her injury is the lack of open captioning of aural content at Display Events, which Defendant does not provide, and if she prevails in this case and Defendant is required to provide open captioning of aural content at Display Events, her injury will be redressed. Thus, I find

that Plaintiff has standing to pursue this claim.

## B. Adequacy or Ascertainability of the Class.

■■■ Defendant argues that the class Plaintiff seeks to certify is not adequately defined, a concept that is also discussed under the rubric of "ascertainability." "The issue of adequacy must generally be determined before the court addresses the prerequisites of Rule 23(a)." *Warnick*, 301 F.R.D. at 556. "A class is sufficiently defined if it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (internal citations omitted). However, the question of administrative feasibility is not pertinent to a class certified pursuant to Rule 23(b)(2). "[W]hile the lack of identifiability is a factor that may defeat Rule 23(b)(3) class certification, such is not the case with respect to class certification under Rule 23(b)(2)." *Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004). Rather, in a Rule 23(b)(2) action, plaintiffs must establish "cohesiveness among class members with respect to their injuries." *Decoteau v. Raemisch*, 304 F.R.D. 683, 690 (D. Colo. 2014). I find that Plaintiff's proposed class definition adequately defines the class and that individual inquiries of each of the class members are not required.

## C. The Requirements of Rule 23(a)

A class may be certified only if all four of the following prerequisites are met:

(1) *Numerosity*: "the class is so numerous that joinder of all members is impracticable";

(2) *Commonality*: "there are questions of law or fact that are common to the class";

(3) *Typicality*: "the claims or defenses of the representative parties are typical

of the claims or defenses of the class"; and

(4) *Adequacy of representation*: "the representative parties will fairly and adequately represent the interests of the class."

Fed. R. Civ. P. 23(a)

 A party seeking to certify a class bears the "strict" burden of proving that the requirements of Rule 23 have been met. *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006). The Court is required to engage in a "rigorous analysis" into whether the requirements of Rule 23 are satisfied. *Wal–Mart*, 564 U.S. at 350–51, 131 S.Ct. 2541.

### 1. Numerosity

 "The burden is upon the plaintiff seeking to represent a class to establish that the class is so numerous as to make joinder impracticable. The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations. Plaintiffs must offer some evidence of established, ascertainable numbers constituting the class, but there is no set formula to determine if the class is so numerous that it should be so certified." *Abercrombie*, 765 F.3d at 1214–15 (internal citations omitted). Ultimately, "the numerosity requirement is not a question of numbers. Rather, there are several factors that enter into the impracticality issue. Such factors may include the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute. Because it is such a fact-specific inquiry, [the Tenth Circuit] grant[s] a wide latitude to the district court in making this determination, and

... defer[s] to its determination if the court made an appropriate judgment call." *Id.* at 1215 (internal citations omitted).

 The court "may make common sense assumptions to support a finding that joinder would be impracticable." *Id.* (internal citations omitted); *see also Greater Los Angeles Agency on Deafness, Inc. v. Reel Servs. Mgmt. LLC*, 2014 WL 12561074, at *7 (C.D. Cal. May 6, 2014) ("*GLAD*") ("where 'general knowledge and common sense indicate that [the class] is large, the numerosity requirement is satisfied' ") (internal citations omitted).

 Defendant asserts that Plaintiff must prove, "that there are *in fact* sufficiently numerous parties" and that her raw statistics do not provide a reasonable nexus between the Pepsi Center attendance figures and the potential number of members in the putative class. *Wal–Mart*, 564 U.S. at 351, 131 S.Ct. 2541. In support of this argument, Defendant points to the fact that Plaintiff's statistics come from sources that utilize a definition of disability different from both the ADA's definition and the class definition. As explained below, I find that Plaintiff here provided statistics sufficient to demonstrate that the class is numerous and joinder is impracticable.

In 2012, the Colorado Commission for the Deaf and Hard of Hearing estimated that 8.6% of the population of Colorado was hard of hearing, and 0.9% was deaf.[3] The U.S. Census estimates that 2.6% of the population of Denver has a "hearing difficulty."[4] The 2015 Annual Disability Statistics Compendium estimates that 10.8% of the population of the United States has "difficulty hearing," and 1.7%

---

3. Colorado Commission for the Deaf and Hard of Hearing, "Info Sheets: The Deaf and Hard of Hearing Population in Colorado," http://ccdhh.com/PDF/Infosheets/ Demographics% 2012.pdf.

4. U.S. Census Bureau, 2011–2015 American Community Survey 5–Year Estimates: Disability Characteristics.

has "severe" difficulty hearing.[5] Based on the U.S. Census Bureau's American Fact Finder tables, the population of Denver is approximately 643,000 and the larger Denver metropolitan area, over 2.7 million. These figures suggest that there are somewhere between 5,700 and 45,000 individuals in Denver or the metropolitan area are deaf, and between 16,000 and 390,000 are hard of hearing.

The Pepsi Center seats between 17,000 and 21,000 people and hosts over 200 events per year.[6] *See* Arena Facts, *supra* note 1. Avalanche, Nuggets, and Mammoth games alone total 92 events.[7] Regular season attendance at Avalanche and Nuggets games at the Pepsi Center for the 2015–2016 season totaled 1.276 million.[8]

While these figures do not establish a precise count of the number of deaf patrons at the Pepsi Center since November 10, 2014, viewed in the light of common sense, I find that they suggest that the class is numerous and hard to identify. This analysis is supported by the Tenth Circuit's analysis in the *Abercrombie* case, in which that court took judicial notice of the fact that "there are millions of Americans with disabilities," and held it "reasonable to infer" that such people would patronize the stores at issue in that case, and that "joining of all of these people in one suit would be impracticable." *Abercrombie*, 765 F.3d at 1215. Similarly, the court in the *GLAD* case held that a class of deaf movie theater patrons met the numerosity

requirement, and relied on census data reflecting the number of deaf individuals in the Los Angeles area and statistics reflecting the number of moviegoers there. As that court noted, where, as here, only injunctive relief is sought, "the requirements of numerosity often 'relax.'" *GLAD*, 2014 WL 12561074, at *8 (internal citation omitted); *see also Colorado Cross–Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 358 (D. Colo. 1999) (*"Taco Bell"*) (holding that a class of individuals with mobility disabilities satisfied numerosity based on estimates of class size, as well as geographic diversity and the difficulty of identifying class members).

In light of the above, and the fact that individuals affected by the lack of captioning would be difficult to identify and unlikely to bring individuals suits, I find that Plaintiff has met her burden with respect to the numerosity requirement of Rule 23(a)(1).

### 2. Commonality and Typicality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. "The class's 'common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."'" *Abercrombie*, 765 F.3d at 1216 (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013) and

---

5. University of New Hampshire, Institute on Disability, "2015 Annual Disability Statistics Compendium," at 191, https://disability compendium.org/sites/default/files/ useruploads/Events/2015% 20Annual% 20Disability% 20Statistics% 20Compendium.pdf.

6. "Arena Facts," http://www.pepsicenter.com/ arena-info/pepsi-center/arena-facts/.

7. http://www.nba.com/nuggets/schedule (41 Nuggets games); https://nhl.bamcontent.com/

images/assets/binary/281827250/binary-file/ file.pdf (41 Avalanche games); https://www. coloradomammoth.com/schedule/ (ten Mammoth games).

8. "2016–2017 Colorado Avalanche Media Guide," at 145 https://nhl.bamcontent.com/ images/assets/binary/282170090/binary-file/ file.pdf; "Denver Nuggets Basketball 2016–17 Media Guide," at 278, http://i.cdn.turner.com/ nba/nba/.element/media/2.0/teamsites/nuggets/ DenverNuggets_2016-17_MediaGuide.pdf.

*Wal–Mart,* 564 U.S. at 350, 131 S.Ct. 2541). Commonality for purposes of Rule 23(a) requires only a single issue common to the class. *See J.B.,* 186 F.3d at 1288. Further, " '[t]hat the claims of individual class members may differ factually should not preclude certification under Rule 23(b)(2) of a claim seeking the application of a common policy.' " *Id.* (quotations omitted). The commonality requirement "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." *Realmonte v. Reeves,* 169 F.3d 1280, 1285 (10th Cir. 1999). "Where a class of persons sharing a common disability complain of the identical architectural barrier based on the same alleged violations of law, commonality is unquestionably established." *Taco Bell,* 184 F.R.D. at 359.

Questions of commonality and typicality "tend to merge," and it is thus appropriate to address them together. *Abercrombie,* 765 F.3d at 1216 (quoting *Wal–Mart,* 564 U.S. at 349 n.5, 131 S.Ct. 2541). Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims of the class. "Typicality insures that the class representative's claims resemble the class's claims to an extent that adequate representation can be expected." *In Re Intelcom Group, Inc. v. Securities Litig.,* 169 F.R.D. 142, 149 (D.Colo. 1996). "The rationale behind the requirement that the class representative's claims be typical of the class claims is recognition that a plaintiff with claims typical of the class will, in pursuing and defending his own self interest in the litigation, be concomitantly advancing or defending the interests of the class." *Dubin v. Miller,* 132 F.R.D. 269, 274 (D.Colo. 1990) (citing 1 H. Newberg, Newberg on Class Actions § 3.22, at 199 (2d ed. 1985)).

Here, I find that there is a common question whether Defendant is required to provide open captioning at Dis-

play Events to those who are deaf and hard of hearing and require open captioning of aural content. This is a question of fact and law which the Court believes is common to the members of the class. Where a single question of ADA compliance is common to the class, Rule 23(a)(2) is satisfied. *See Abercrombie,* 765 F.3d at 1216.

Furthermore, Plaintiff's claim is typical of the claims of the class: she, too, claims that Defendant violates Title III by failing to provide open captioning of Display Events. Where the representative plaintiff and members of the class have similar disabilities and challenge the legality of barriers under the same statute, "the claims of the representative plaintiff[ ] are typical of the class." *Taco Bell,* 184 F.R.D. at 360; *see also Lucas,* 2005 WL 1648182, at *3 (holding that where the focus of an ADA lawsuit is final injunctive relief against the defendant benefitting the class as a whole, "the prerequisites of commonality and typicality are met"). Thus, I find that the putative class satisfies Rule 23(a)(2) and (3).

### 3. Adequacy of Representation

The final requirement of Rule 23(a) is adequate representation. Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." The Tenth Circuit has held that adequacy of representation depends on resolution of two questions: " '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?' " *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187–88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)). Plaintiff bears the initial burden of demonstrat-

ing adequacy, after which the burden shifts to the defendant; "[a]bsent evidence to the contrary, a presumption of adequate representation is invoked." *Decoteau*, 304 F.R.D. at 689 (internal citations omitted).

 Here, the named Plaintiff, like the members of the proposed class, seeks remedies for the lack of open captioning that poses a barrier to their full and equal enjoyment of events at the Pepsi Center. In addition, Plaintiff contends, and I agree, that there are no unique facts or defenses relevant to the named Plaintiff's claim that would put her in conflict with the proposed class. Defendant has stipulated, and I agree, that Plaintiff's counsel, is experienced in class actions and will adequately represent the interests of Plaintiff and the Class.

Therefore, I find that the class satisfies Rule 23(a)(4): the named Plaintiff is a member of the class she seeks to represent and her interests are not in conflict with those of the class; and the named Plaintiff and her counsel can fairly and adequately protect the interests of the absent class members.

## D. Whether the Class Satisfies the Requirements of Rule 23(b)(2).

Having determined that the Rule 23(a) requirements are met, I must also decide whether the action falls within one of the three categories set forth in Rule 23(b). *Trevizo*, 455 F.3d at 1161–62.

This case clearly falls within the paradigm for class certification under Rule 23(b)(2) because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, all class members have suffered the same injury and Plaintiff's Second Amended Class Action Complaint seeks an injunction that would reme-dy all class members' injuries and satisfy Fed. R. Civ. P. 65(d).

I am satisfied, based on the record before me, taking into account the class definition which I find to be adequate, that it is appropriate to certify the class under Rule 23(b)(2) because injunctive relief is being requested that would be appropriate respecting the class as a whole.

## E. Appointing Class Counsel Pursuant to Rule 23(g).

Under Rule 23(g), I must appoint class counsel when a class is certified. Plaintiff requests that I appoint Amy Robertson of the Civil Rights Education and Enforcement Center as class counsel in this matter.

Factors relevant to the appointment of class counsel are the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class. Fed.R.Civ.P. 23(g)(1)(A)(i)-(iv).

Based on Plaintiff's counsel's experience in the relevant areas of law, and counsel's conduct to date in this case, I conclude that Plaintiff's counsel satisfies the requirements outlined in Fed.R.Civ.P. 23(g). Plaintiff's counsel is amply qualified to act as counsel for the class, and is thus appointed as class counsel pursuant to Rule 23(g).

## III. CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED that Defendant's various objections to certification are overruled, and Plaintiff's Motion for Class Certifica-

tion (ECF No. 15), is **GRANTED.** Further, it is

ORDERED that Plaintiff Kirstin Kurlander shall be certified as the representative of a class of individuals seeking injunctive relief as defined in this Order, and Amy Robertson shall be appointed as class counsel pursuant to Rule 23(g).